W.C. LANE, Jr., Plaintiff-Appellant,

v.

CELOTEX CORPORATION, et al., Defendants,

Keene Corporation, Defendant-Appellee.

No. 84–8310.

United States Court of Appeals, Eleventh Circuit.

Feb. 24, 1986.

---

**1527**

Richard P. Schultz, Atlanta, Ga., for defendant-appellee.

Before HILL and FAY, Circuit Judges, and TUTTLE, Senior Circuit Judge.

PER CURIAM:

W.C. Lane, Jr., a boilermaker, suffers from asbestosis. On March 31, 1982 he filed suit in the United States District Court for the Southern District of Georgia, claiming exposure to asbestos fibers over a thirty-nine year work span. The complaint alleges that part of that exposure was to asbestos dust emitted from products manufactured by Keene Corporation.[1] The district court granted Keene's motion for summary judgment. On appeal, Lane argues that the district court improperly disregarded the affidavit of a co-worker which Lane claims raised a genuine issue of material fact. We agree and accordingly reverse the grant of summary judgment.

## I.

Under the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of proof falls upon the party seeking the summary judgment, and "[a]ll doubt 'as to the existence of a genuine issue of material fact' must be resolved against the moving party." *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir.1978) (quoting *Gross v. Southern Railway*, 414 F.2d 292, 297 (5th Cir.1969)).[2] *See Adickes*

Eugene C. Brooks, IV, Clint Sitton, Savannah, Ga., for plaintiff-appellant.

**1.** The complaint named twenty-four manufacturers and sellers of asbestos-containing products as defendants. Two million dollars in compensatory and punitive damages was sought for personal injuries allegedly caused by the defendants' failure to warn Lane of the dangers associated with asbestos. Keene is the only defendant involved in this appeal.

**2.** The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

v. *S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The district court must consider all of the evidence before it; summary judgment can be entered only "if *everything* in the record—pleadings, depositions, interrogatories, affidavits, etc.—demonstrates that no genuine issue of material fact exists." *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir.1980) (emphasis in original). In this regard, the district court must not resolve factual disputes by weighing conflicting evidence, *see Warrior Tombigbee Transportation Co. v. M/V Nan Fung*, 695 F.2d 1294, 1298 (11th Cir.1983), since it is the province of the jury to assess the probative value of the evidence. *See Odum v. Celotex Corp.*, 764 F.2d 1486, 1488 (11th Cir.1985). The district court must not "assess[ ] the probative value of any evidence presented to it, for this would be an unwarranted extension of the summary judgment device." *Gauck v. Meleski*, 346 F.2d 433, 436 (5th Cir.1965).

## II.

### A.

The central dispute in this case concerns whether Lane produced sufficient evidence to support a finding that he was directly exposed to any of Keene's asbestos-con-

taining products. In order to pursue this lawsuit against Keene, Lane must make this threshold showing. *See Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1481 (11th Cir.1985) ("recovery will require the plaintiff to show that he was exposed to defendant's asbestos-containing product by working with or in close proximity to the product").

On November 23, 1983 Keene moved for summary judgment. Keene based this motion on "the fact that through the course of discovery, neither the plaintiff nor any other competent source of evidence has identified or substantiated the plaintiff's use or exposure to any products manufactured by Keene." Lane opposed the motion arguing that a genuine issue of material fact existed which precluded the grant of summary judgment. Lane submitted the affidavit of a co-worker, Wilmer Ring, dated December 16, 1983.[3] In this affidavit, Ring "an insulator/pipefitter," recalled using Keene's product Monoblock[4] at the ITT Rayonier plant in Jesup, Georgia "in approximately 1969" while "working with and in close proximity to [Lane]." [5]

Even in light of Ring's affidavit, Keene argued that summary judgment was appropriate.[6] Keene maintained that Ring's affi-

---

**3.** The complete affidavit reads as follows:

Personally appeared before the undersigned officer, duly authorized to administer oaths, WILMER RING, who after being first duly sworn, deposes and says:

1. Affiant is an insulator/pipefitter who throughout his work career has been exposed to numerous asbestos-containing thermal insulation products.

2. Affiant was employed at ITT Rayonier, Jesup, Georgia in approximately 1969 and recalls the use of and exposure to various asbestos-containing products.

3. Affiant recalls working with and in close proximity to the other trades including the boilermakers.

4. Affiant recalls boilermaker, W.C. Lane, working with and in close proximity to him at ITT Rayonier, Jesup, Georgia.

5. Affiant further recalls the use of and exposure to Caltemp Pipe Insulation, Monoblock, and a black weatherkote which was supplied in five gallon pails and fifty-five gallon drums while working with and in close proximity to W.C. Lane.

6. That Affiant as well as the other trades such as the boilermakers, including W.C. Lane, were exposed to the dust emitted by these asbestos-containing products.

**4.** The parties do not dispute that Monoblock contains asbestos.

**5.** Lane also submitted an affidavit in which he recalled working "with and in close proximity to Wilmer Ring" at the ITT Rayonier plant "in approximately 1969."

**6.** In *Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1487 (11th Cir.1985), the Eleventh Circuit noted with approval the district court's finding that summary judgment is inappropriate where " 'the plaintiff could identify by name those insulators around whom he worked,' and the insulators provided affidavits that they used asbestos-containing products, or 'the insulators identified the plaintiff by name as working in the same vicinity as they worked.' " Keene does not contest this holding but instead attempts to discredit Ring's affidavit.

davit "must be disregarded" because it is "in direct and utter conflict" with Ring's earlier deposition testimony.[7] Apparently, the district court agreed and granted Keene's motion for summary judgment.[8]

### B.

In support of the district court's decision, Keene cites *Perma Research & Development Co. v. Singer Co.*, 410 F.2d 572 (2d Cir.1969), for the proposition that a district court may grant summary judgment if an issue raised by affidavit is clearly inconsistent with earlier deposition testimony. In that case, the plaintiff Perma Research alleged that the defendant had fraudulently entered into a contract which it never intended to perform. The president of Perma Research was extensively deposed and disclosed no specifics of the fraud claim. In a subsequent affidavit, the president referred to a conversation in which a representative of the defendant allegedly stated that the defendant "never had any intention of performing the ... contract." *Id.* at 577 (emphasis deleted). The Second Circuit concluded that the district court had properly granted summary judgment since the statement in the affidavit was blatantly inconsistent with the earlier deposition. "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit con-

tradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.* at 578 (citations omitted).

The Second Circuit's rationale has been followed by other courts faced with a party's attempt to create a factual dispute through a contradictory affidavit. For example, in *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540 (9th Cir.1975), the Ninth Circuit affirmed a grant of summary judgment where an issue of fact existed "only because of the inconsistent statements made by Radobenko the deponent and Radobenko the affiant." *Id.* at 543. The court recognized that "[t]he very object of summary judgment is to separate real and genuine issues from those that are formal or pretended," *id.* at 544 (citation omitted), and concluded "that the issues of fact created by Radobenko are not issues which this Court could reasonably characterize as genuine; rather, they are sham issues which should not subject the defendants to the burden of a trial." *Id.*

The Eleventh Circuit authority is *Van T. Junkins & Associates v. U.S. Industries*, 736 F.2d 656 (11th Cir.1984). In that case, this court affirmed a grant of summary judgment, holding that a district court may properly find that a party's contradictory affidavit is a sham.[9] "When a party has

---

**7.** Wilmer Ring was deposed in 1981 in connection with his unrelated lawsuit for asbestos-related injuries. Short excerpts from this deposition were included in the record and attached to Keene's Brief.

**8.** The reason for the summary judgment is not at all clear from the record. On March 6, 1984 the district court heard oral argument and indicated it would grant Keene's motion for summary judgment. The court stated: "I looked at it [the motion] again last night after looking at it yesterday. I'm going to grant the motion for summary judgment as to Keene, and I will point out in the motion the order I went through in determining whether or not to grant it." On March 16, 1984 the district court entered an order granting Keene's motion for summary judgment "[f]or the reasons stated in open court on March 6, 1984."

In reviewing the district court's ruling, we can only assume that the summary judgment was

premised on Keene's sole argument to that court—that Ring's affidavit is a sham because it is "clearly inconsistent" with his prior deposition testimony. *See Harris v. United States*, 768 F.2d 1240, 1242 (11th Cir.1985) (citation omitted) (in reviewing grant of summary judgment, appellate court may consider only matters presented to the district court). Because we find that Ring's affidavit and deposition testimony are not "clearly inconsistent," *see infra* p. 1529, we reverse the grant of summary judgment.

**9.** In that case, the plaintiff, Van T. Junkins and Associates, Inc. ("Junkins"), alleged that the defendant's agents told Junkins' president that one of the terms and conditions of a dealership agreement would be that Junkins purchase one of defendant's buildings. Seeking damages for fraud and misrepresentation, Junkins claimed that it purchased one of defendant's buildings but the defendant refused to enter into the deal-

given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Id.* at 657. *See also Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1366 (8th Cir.1983) ("only ... where the conflicts between the deposition and affidavit raise only sham issues should summary judgment be granted"); *Price v. Worldvision Enterprises*, 455 F.Supp. 252, 260 (S.D.N.Y.1978) (affidavit testimony departed "so markedly from the prior deposition ... as to brand as bogus the factual issues sought to be raised"), *aff'd mem.*, 603 F.2d 214 (2d Cir.1979).

The crux of these cases rests with the reviewing court's determination that an issue raised by an affidavit is a sham because it contradicts or conflicts with earlier deposition testimony. In *Kennett-Murray Corp. v. Bone*, 622 F.2d 887 (5th Cir.1980), however, the Fifth Circuit cautioned of the dangers inherent in this approach.

> Certainly, every discrepancy contained in an affidavit does not justify a district court's refusal to give credence to such evidence. In light of the jury's role in resolving questions of credibility, a district court should not reject the content of an affidavit even if it is at odds with statements made in an earlier deposition.

*Id.* at 894 (citation omitted). The plaintiff in *Kennett-Murray* brought suit against Bone, a former employee, to recover on a promissory note and an employment contract. Bone's defense was that no consideration existed for the note because he was fraudulently induced to sign the employment agreement. During his lengthy deposition, Bone gave inconsistent testimony regarding whether his former employer, the plaintiff, made any "statements ... that

could be construed as a fraudulent misrepresentation." *Id.* at 890. In a subsequent two-page affidavit, however, Bone explained his earlier deposition testimony and supported his allegations of fraud. In reversing the district court's grant of summary judgment, the Fifth Circuit found that Bone's affidavit was not "inherently inconsistent" with his earlier testimony. *Id.* at 894. "While some statements in Bone's deposition differ with those in his affidavit, these conflicts present questions of credibility which require jury resolution." *Id.* at 895.

### III.

Despite the broad language in *Kennett-Murray*, this court found that "[t]here is no conflict in the *Perma Research* and *Radobenko* decisions and the Fifth Circuit opinion in *Kennett-Murray Corp.*" *Van T. Junkins*, 736 F.2d at 658. *But see id.* at 659–60 (Johnson, J., dissenting) (criticizing the majority's reading of *Kennett-Murray* as too narrow). This court recognized: "Each grant by a district court of a summary judgment rests upon the distinct issues and facts of that particular case." *Id.* at 658.

Given the facts in this case, we hold that the district court improperly granted Keene's motion for summary judgment. As an initial matter, we note that Wilmer Ring is not a party to this lawsuit. In *Perma Research, Radobenko, Kennett-Murray* and *Van T. Junkins*, the contradictory affidavits were submitted by a party and, thus, the possibility of sham factual issues was raised. Here there is little chance of sham factual issues. Ring is a disinterested witness and it is our view that any inconsistency in his testimony is more likely the result of his faulty memory than

---

ership contract. During his deposition, however, Junkins' president admitted that the defendant's representatives did not tell him that he had to purchase a building in order to become a dealer. "The fact that there was no condition attached to his purchasing the building was made crystal clear in three places in the deposi-

tion." *Id.* at 657. Still, Junkins attempted to avoid summary judgment with its president's contradictory affidavit. In the affidavit, Junkins' president stated that one of the defendant's representatives "stated to me that if ... I would purchase one of their buildings then I would be awarded the dealership." *Id.*

a predisposition to lie.[10] Thus, while a district court may find that a *party's* contradictory affidavit constitutes a sham, *e.g., Van T. Junkins*, 736 F.2d at 656, we would be unable, absent great trepidation, to affirm a similar finding with respect to a disinterested *witness'* contradictory affidavit.[11]

■ We need not decide, however, whether a district court should be permitted to disregard a disinterested witness' affidavit merely because it is inconsistent with prior deposition testimony. Even were we to assume that the rationale behind *Perma Research, Radobenko, Kennett-Murray* and *Van T. Junkins* is applicable to a case such as this, summary judgment would still be inappropriate because Ring's affidavit is not "inherently inconsistent" with his earlier deposition testimony.

In his affidavit, Ring recalled the use of Keene's product Monoblock "with and in close proximity to" Lane "in approximately 1969" at the ITT Rayonier plant in Jesup, Georgia. In his deposition, Ring did not mention his work at ITT Rayonier in 1969 [12] and could only recall using Monoblock "[a]t the pulpmill in Brunswick," Georgia "[i]n the '60's." [13] In support of the

---

10. At oral argument, even Keene's counsel chose not to question Wilmer Ring's truthfulness: "I would not use the word perjury.... I have no desire to attribute that motive to Mr. Ring in this case even if it might benefit me. I know Mr. Ring from a lot of dealings with these cases and I don't want to attribute that to him." We applaud counsel's candor and appreciate such conduct.

11. In *Vanlandingham v. Ford Motor Co.*, 99 F.R.D. 1 (N.D.Ga.1983), the United States District Court for the Northern District of Georgia held that a witness' affidavit which "is inherently and blatantly inconsistent with her prior deposition ... may not be used to create a fact in dispute." *Id.* at 3 (citation omitted). The plaintiff, William J. Vanlandingham, was the administrator of his daughter's estate. He moved to have the court reconsider its grant of defendants' motion for partial summary judgment on the issue of pain and suffering. In support of the motion to reconsider, Vanlandingham submitted the affidavit of Shirley Belcher, a witness to the automobile accident that resulted in his daughter's death. In her affidavit, Belcher stated "that Ms. Vanlandingham was moving and trying to speak and 'was conscious and obviously in tremendous pain.'" *Id.* The court disregarded Belcher's affidavit because Belcher "previously testified at her deposition that she did not try to talk to Ms. Vanlandingham [immediately after the accident] because she was unconscious and, in fact, dead." *Id.*

*Vanlandingham* appears to be the only case in which a non-party's affidavit was disregarded because it conflicted with earlier deposition testimony. It is clear that the witness' deposition testimony was in irreconcilable conflict with her affidavit. Such is not our situation.

12. When asked about his work at ITT Rayonier, Ring testified as follows:

Q. How about Rust Engineering?
A. Yeah, I worked for Rust.
Q. Where did you work for them in 1967?
A. I worked for them in Jesup.

Q. For Rayonier?
A. Uh-huh.
Q. What were you doing for them over there?
A. Insulating.
Q. How long were you on that job, three or four months?
A. Yes, sir, something about that—about all of them.
Q. Now, your Social Security printout reflects that you may have worked for them in '67 into 1968. Do you recall being over there that long?
A. Well, Rust done that one, and then they come over to Port Wentworth. Wait a minute, now. Yeah, I think we stayed at Jesup that long, yeah.
Q. What were you doing over at Rayonier this time?
A. What year are you up to now?
Q. We are talking about 1967 going up to 1968.
A. (No response).
Q. Do you recall being over at Rayonier in '67 and '68?
A. Not definitely. I am trying to think where I was at.
Q. Can you recall working for Rust Engineering in '67 or '68?
A. Not definitely, I can't.

13. Ring testified about his use of Monoblock as follows:

Q. You do recall Mono-Block?
A. Yes.
Q. Do you recall when or where?
A. At the pulpmill in Brunswick.
Q. Approximately when was that?
A. In the '60s.
Q. Sometime in the 1960s?
A. Yes, sir, I think so.
Q. By whom were you employed on that job?
A. North Brothers.
Q. For what purpose did you use the Mono-Block?

summary judgment, Keene has seized upon these two purported inconsistencies.

First, Keene argues that Ring's affidavit must be disregarded because, during his deposition, Ring testified that he recalled working for Rust Engineering at ITT Rayonier in 1967 and in early 1968 but did not testify that he worked there at any other time. In his affidavit, Ring recalled working at the ITT Rayonier plant "in approximately 1969." Keene's position is that Ring was "under substantial financial motivation to recall as completely as possible his work history and product exposure at [his] deposition." Thus, Keene concludes that Ring's deposition is "thoughtful and complete," and his "affidavit shifting dates of employment from 1967 and early 1968 to 1969 is clearly a substantial direct and fatal departure from his previous deposition testimony." We disagree.

Ring's affidavit is not necessarily inconsistent with his earlier deposition testimony. According to Keene, Ring's deposition testimony evidences that Ring *only* worked at the ITT Rayonier plant in 1967 and 1968. Keene is incorrect. At one point in his deposition Ring did testify that he recalled working at ITT Rayonier in 1967 and 1968 [14] but Ring never stated that he did not work at ITT Rayonier in 1969 or that he only worked at ITT Rayonier when employed by Rust Engineering. Ring's deposition testimony does not at all foreclose the possibility that Ring was at ITT Rayonier in 1969 with Lane. That Ring did not mention his work at ITT Rayonier in 1969 during his deposition is no basis for disregarding the affidavit; instead this apparent conflict presents a question of credibility which requires jury resolution.

Second, Keene argues that Ring's affidavit may properly be characterized as a sham because Ring, during his deposition, testified "that the *only* time he used Monoblock was on a pulpmill (Brunswick Pulp & Paper Company) in Brunswick, Georgia, sometime in the 1960's." Since Ring, in his affidavit, recalled the use of Monoblock at ITT Rayonier in 1969, Keene maintains that the affidavit "is in irreconcilable and total conflict" with his deposition testimony and must be disregarded. Our interpretation of *Van T. Junkins*, however, necessitates a different result.

As we read *Van T. Junkins*, we may *only* disregard an affidavit that "contradicts, without explanation, previously given *clear* testimony." *Van T. Junkins*, 736 F.2d at 657 (emphasis added). The earlier deposition testimony must consist of "clear answers to unambiguous questions which negate the existence of any genuine issue of material fact." *Id.* Here, Ring's deposition testimony is neither clear nor unambiguous.

Ring was asked whether he "recall[ed]" using Monoblock "on any job other than the Brunswick paper mill." He was not asked whether he could recall exposure to, or "working with and in close proximity to" others using Monoblock. In his affidavit, Ring "recall[ed] the use of and exposure to" Monoblock at ITT Rayonier. Ring's affidavit, however, does not state that Ring recalled using Monoblock at ITT Rayonier. Ring may have used Monoblock only at the Brunswick paper mill. His deposition testimony does not necessarily rule out exposure to the product, with Lane, at ITT Rayonier. Because Ring's affidavit may be harmonized with his earlier deposition testimony and because his deposition testimony is not clear but equivocal ("I believe that was it."), we feel that submission of the case to a jury is warranted.

A. We used it on some breechings.
Q. Boiler breechings?
A. Yes, sir.
Q. Do you recall that Mono-Block had a nickname of some type?
A. Chocolate Block.
Q. Was that the first occasion that you had to use the Mono-Block?
A. Yes.

Q. Do you recall using it on any job other than the Brunswick pulpmill?
A. I believe that was it.

14. At another point in the deposition, however, Ring could "[n]ot definitely" recall working at ITT Rayonier in 1967 and 1968. His deposition testimony can thus hardly be characterized as clear and unambiguous under *Van T. Junkins*. *See infra* p. 1532.

Keene's purported inconsistencies stem from omissions in Ring's deposition testimony. Ring's deposition, however, was taken in 1981. He was questioned about worksites, dates and asbestos-containing products encountered in the 1960's. Ring may have had great difficulty recalling this detailed information. Under the circumstances of this case, we refuse to punish Lane merely because one of his co-workers might enjoy less than perfect recall.

## IV.

■ Ring's affidavit is not inherently inconsistent with his prior deposition testimony. Ring's affidavit should not have been disregarded but considered with *"everything in the record." Keiser*, 614 F.2d at 410. When considered, it becomes clear that Lane produced sufficient evidence to support a finding that he was directly exposed to Monoblock. While some statements in Ring's deposition might be difficult to square with his affidavit, these conflicts present questions of credibility which require jury resolution. Accordingly, the grant of summary judgment is reversed.[15]

REVERSED and REMANDED.

HILL, Circuit Judge, dissenting:

As the majority opinion notes, it is the general rule in this circuit that "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Associates v. U.S. Industries*, 736 F.2d 656 (11th Cir.1984). The majority suggests (without holding) that perhaps the Ring affidavit ought not be tested by this standard, which has previously only been applied by this court to inconsistent sworn statements by parties to the litigation.

I would apply this rule with as much force in this particular context, however, as in the context in which it was developed. I am not as confident as the majority seems to be in Ring's neutrality in this litigation; I certainly would not consider him "disinterested" in a practical rather than purely legalistic sense. Lane and Ring have, through the same counsel, filed lawsuits alleging asbestos-related injuries against many of the same manufacturers of asbestos-containing products. Evidence of exposure to the defendants' products is obviously essential to the success of such claims. There may not exist, as Keene suggests, a "cooperative arrangement" whereby workers "exchange" testimony of product exposure in each other's cases; the threat of such a situation developing, however, is clear. Without passing upon the applicability of the *Van T. Junkins* rule to witnesses who are without question certain to be entirely disinterested in the outcome of the case, I would find it applicable here.

Applying the *Van T. Junkins* rule, the court in the majority opinion finds that "Ring's affidavit is not necessarily inconsistent with his earlier deposition testimony." In my view, the Ring affidavit does indeed clearly contradict his earlier deposi-

15. As an additional argument in support of the summary judgment, Keene notes that Ring was not included in Lane's witness list; Ring's "affidavit was [therefore] properly rejected by the trial court because it constituted hearsay evidence, inadmissible at trial, and improper in opposition to the Motion for Summary Judgment of Keene." Keene had filed a motion to strike Ring's affidavit for this reason but the district court did not rule on the motion. At oral argument, Keene's counsel indicated that the district court only "ruled on the merits of the summary judgment and, at that time, all the parties were satisfied to have it determined on that basis. We thought that was a clear matter for appeal."

It is, of course, the general rule that a federal appellate court will not consider an issue not passed upon below. *See Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). The rule "is 'essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues ... [and] in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence.'" *Id.* (quoting *Hormel v. Helvering*, 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941)). Here Lane should have the opportunity to respond to the motion to strike. We therefore refuse to resolve the issue before it is passed on by the trial court.

tion testimony, insofar as that testimony is relevant to this case, without explaining the conflict. The deposition testimony given by Ring in his own asbestos case consisted of a detailed, systematic inquiry into Ring's use of and exposure to asbestos-containing products over the course of his career. His recollection was prompted with the aid of social security records indicating which employers had made social security payments on his behalf and when. Although it was naturally difficult in 1981, when the deposition was taken, for Ring to recall with precision and clarity the details of employment which had occurred ten or fifteen years previously, his testimony is unambiguous concerning his use of Monoblock, the only asbestos-containing product manufactured by Keene that is at issue here. In the deposition testimony set forth in footnote 13 to the majority opinion, Ring stated clearly that the only time he used Monoblock was at a pulp mill in Brunswick, Georgia. In the affidavit he completed in 1983, however, which is set forth in full in footnote 3, Ring "recalls the use of and exposure to ... Monoblock ... while working with and in close proximity to W.C. Lane" in Jesup, Georgia in approximately 1969. This latter recollection, which is the only statement made by anyone indicating that Lane was ever exposed to Keene manufactured asbestos-containing products, is in utter and complete conflict with Ring's earlier deposition testimony. Further, nowhere in his brief affidavit does Ring offer any explanation for his earlier failure to testify consistently with the statements made in the affidavit. Applying the rule set forth in *Van T. Junkins*, the district court was therefore eminently correct in refusing to credit the Ring affidavit in its determination of whether there existed a genuine issue of material fact concerning Lane's exposure to asbestos-containing products manufactured by Keene.

I would also add a further comment. These asbestos cases have imposed a heavy burden on the district courts. The district court whose decision we reverse in this case has prescribed precise, orderly and efficient procedures for the processing of such claims. These procedures, the integri-

ty of which is essential to the success of the tasks the court must perform, included the requirement that Lane provide the defendants with a list of the witnesses he intended to produce at trial by November 30, 1983. Lane provided Keene with a list of nineteen witnesses that Lane indicated he might call to testify at trial. That list did not include Ring. Each of the witnesses on Lane's "may call" list was deposed; because no witness indicated any knowledge that Lane had been exposed to any Keene asbestos-containing products, Keene filed its motion for summary judgment. The Ring affidavit was only produced by Lane in response to the motion for summary judgment. Ring's name was never added to Lane's witness list. Keene filed with the district court a motion to strike the Ring affidavit on the grounds that it should not be considered on summary judgment in a case in which the affiant will not be permitted to testify at trial. As this court's opinion notes, the district court did not rule on the motion to strike the Ring affidavit, and it is therefore not before us now. I simply add to what the majority has already said the observation that, on remand, the propriety of considering the Ring affidavit on summary judgment in light of Lane's failure to include Ring on his witness list will apparently still be before the district court.