[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 18, 2007
THOMAS K. KAHN
CLERK

No. 07-11985
Non-Argument Calendar
_____

D. C. Docket No. 05-00600-CV-JOF-1

DEBORAH ALLEN-SHERROD,
for her minor child Anthony Stallworth II,

Plaintiff-Appellant,

versus

HENRY COUNTY SCHOOL DISTRICT,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(September 18, 2007)

Before TJOFLAT, HULL and HILL, Circuit Judges.

PER CURIAM:

Appellant Deborah Allen-Sherrod filed suit on behalf of her minor son, Anthony Stallworth II, against appellees, the Henry County School District and Coach David Edinger, raising claims of race discrimination under 42 U.S.C. § 1981, and race retaliation under 42 U.S.C. § 1981, when Stallworth did not make the varsity basketball team his senior year in high school. The district court granted the appellees' motion for summary judgment. Based upon a thorough review of the record, the briefs, and the arguments of counsel contained therein, we affirm the judgment of the district court.

I.

The claim of race retaliation arises from an incident that occurred on February 6, 2003, eight months before student Stallworth was cut from the varsity basketball team in October 2003. The incident involved two Caucasian high school basketball coaches (not including Edinger), two African-American middle school (not high school) students and the mother of one of the middle school students.

According to the appellant's brief, the two middle school students came to the high school gymnasium for some weight training. One of the high school girls' varsity basketball coaches told the two middle school students to leave the premises. While the two middle school students were leaving, Coach Edinger

2

called the middle school students "thugs" and suggested they were engaged in drug activities by the looks of their jackets and other clothing. Student Stallworth overheard Edinger make these statements.

After this confrontation, a mother of one of the middle school students went back to the high school gym. The same girls' coach stopped practice to escort them out of the gym. As he was attempting to do so, he touched the student's mother and there was a physical fight. Apparently, this was a dramatic moment as nothing of this nature had ever happened at this school before.

Student Stallworth went home and told his mother about the incident, including Coach Edinger's comments to the students as they were leaving the gymnasium. Stallworth's mother, appellant Allen-Sherrod here, called a member of the school board and other administrators at the high school to discuss the incident. In her contacts with high school administrators, Allen-Sherrod referred to Coach Edinger's derogatory remarks - "thugs" - "drugs" - to the middle school students as told to her by her son, Student Stallworth. The police were investigating the incident as an assault.

## II.

The district court granted summary judgment to the defendants based upon the failure of the plaintiffs to prove that, when Coach Edinger determined that

3

student Stallworth had not made the "cut" for the varsity high school basketball team his senior year, some eight months after the incident, that Coach Edinger had prior knowledge that Stallworth's mother had reported his derogatory remarks demonstrating racial animus to the high school administrators and the school board. Edinger denied that he knew that Stallworth had reported the incident to his mother when he decided Stallworth would not make the cut.

III.

On appeal, plaintiffs challenge Edinger's credibility, citing copious evidence that Edinger was not to be believed and that he was an inveterate, if not pathological liar on a wide range of subjects. The district court refused to consider Edinger's credibility on summary judgment:

> In her response to the motion for summary judgment, Plaintiff makes an extensive attack on Defendant Edinger's credibility. At summary judgment it is improper for the court to consider the credibility of any witness. *Lane v. Celotex Corp.*, 782 F.2d 1526, 1528 (11th Cir. 1986) ("The district court must not assess[] the probative value of any evidence presented to it, for this would be an unwarranted extension of the summary judgment device.").

[R-1-66, ¶. 9-10, n. 5]. Appellants complain that the district court got it exactly backwards, turning the summary judgment process on its head, when it confused the standards applicable to the consideration of the movant's evidence as opposed to the evidence favoring the nonmovant. The appellees complain that, although the

4

appellants took ten depositions in this case, they failed to offer any evidence proving that Edinger did indeed know that student Stallworth had overheard Edinger use derogatory statements about the two African-American middle school students; that he had told his mother about them; and that his mother had reported Stallworth's part in the matter when she complained about the incident the next day with school administrators and a member of the school board.

## IV.

The credibility issue upon which appellants rely is a red herring. The district court was correct in observing that it could not consider Edinger's credibility as a witness in ruling upon summary judgment. *Lane,* 782 F.2d at 1528 ("a District Court must not resolve factual disputes by weighing conflicting evidence since it is the province of the jury to assess the probative value of the evidence" . . . a "District Court must not 'assess[] the probative value of any evidence presented to it, for this would be an unwarranted extension of the summary judgment device.'") (internal citations omitted). It is a hornbook principle that it is not proper for a district court to assess witness credibility when consideration a motion for summary judgment as such determinations are reserved for the jury. *See Avocent Huntsville Corp. V. ClearCube Technology, Inc.*, 443 F.Supp.2d 1284, 1325 (N.D. Ala. 2006); *Wanlass v. Fedders Corp.*, 145 F.3d 1461, 1463 (Fed. Cir. 1998) ("[i]n

determining the propriety of summary judgment, credibility determinations may not be made"); *see also Amstead Industries, Inc. V. Buckeye Steel Castings Co.*, 24 F.3d 178, 183 (Fed. Cir. 1994) ("[i]n is within the province of the jury to determine the credibility of a witness and the weight to be given his testimony").

In short, the district court was correct in observing that it could not consider the credibility of Edinger as a witness. The district court could neither credit nor discredit Edinger. It could merely note that Edinger's statement put the question of whether or not he was on notice of student Stallworth's participation in the incident, some eight months earlier, in issue in the case. That put the burden of proof of notice on the appellants. In reviewing the record, we find no evidence presented by appellants that Edinger did indeed know that Stallworth had overheard heard him using derogatory language indicating racial animus at the time of the incident in February 2003; that he had told his mother about them; and that the mother had reported Stallworth's part in the matter when she complained of the incident the next day to high school administrators and a school board member.

The judgment of the district court is

AFFIRMED.