[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 09-12821 & 09-13714
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 6, 2010
JOHN LEY
CLERK

D. C. Docket No. 05-02517-CV-WSD-1

STEVEN D. SANTHUFF,
DIANA MENDEZ SANTHUFF,

Plaintiffs-Appellants,

versus

STEVE SEITZ,
in his individual capacity,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

Before EDMONDSON, BIRCH and CARNES, Circuit Judges.

PER CURIAM:

Steven and Diane Santhuff brought this 42 U.S.C. § 1983 action against Steve Seitz, an officer of the Georgia Department of Natural Resources ("the Department"), alleging violations of their Fourth and Fourteenth Amendment rights. The district court, upon reconsideration, granted Seitz's motion for summary judgment. The Santhuffs appeal that decision as well as the district court's award of costs and attorneys fees to Seitz.

## I.

## A.

In 2003 the United States Fish and Wildlife Service invited the Department to participate in Operation Snapper, a joint investigation into misconduct involving freshwater turtles. The Alabama Department of Conservation and Natural Resources also participated in the cooperative effort. Seitz served as lead agent for the operation in Georgia. During Operation Snapper, Seitz worked with two agents of the Fish and Wildlife Service, Garry Phillips and Hal Hamrick. He also worked with Michael Bloxom, an officer with the Alabama Department of Conservation and Natural Resources.

Seitz learned that Steve Santhuff was a turtle enthusiast and dealer in turtles. On July 10, 2003, a concerned citizen informed Seitz that Santhuff possessed at his residence species of turtles protected by state and federal law. At that point,

2

Santhuff became the focus of a joint federal and state criminal investigation.

The events at the heart of this case occurred on July 14, 2005. The parties agree that no warrant authorizing the search of the Santhuffs' property had been issued at that point and that Phillips and Bloxom visited the Santhuffs' Georgia residence that day. Hamrick might have accompanied Phillips and Bloxom. The officers posed as city utility workers. They drove a utility truck and wore hard hats and green reflective vests.

The parties also agree that officers photographed the Santhuffs' backyard on July 14, 2005. Some of those photographs show stock tanks covered with wire lids. Two of the photographs focus on an individual tank. In one of those single-tank photographs, two sticks are poking through the wire lid of a tank near the Santhuffs' neighbor's fence line. In the other, alligator snapping turtles can be seen below the water's surface in the tank. The parties' consensus on the facts ends there.

Santhuff contends that the agents trespassed onto his property on July 14, 2005 in order to gather evidence to help secure a search warrant. He believes that the photographs taken of his property on July 14 show that the officers trespassed in his backyard. Later, Santhuff's friend Lance Fisher executed three affidavits attesting that on July 14 he saw officers take turtles from the Santhuffs' property

3

and that he saw Seitz personally participating in that warrantless search and seizure.

Seitz asserts that he did not personally investigate the Santhuffs' residence on July 14. Instead, Phillips and Bloxom informed him that, while standing on the outside of the fence surrounding the Santhuffs' backyard, they had seen a stock tank containing an alligator snapping turtle, which is a protected species under Georgia law. Ga. Comp. R. & Regs. 391-4-10-.09(3)(n). According to Seitz, Phillips and Bloxom also told him that they had seen more than twenty stock tanks in the Santhuffs' backyard and that about nine of them were partitioned off in what looked like a breeding area. Bloxom and Phillips showed Seitz the photographs they took on July 14, including a picture of alligator snapping turtles. The agents told Seitz that they had made all of their observations and had taken all of their photographs from the backyard of the Santhuffs' neighbors.

On July 15, 2005, Seitz contacted the Department's special permits unit and asked if Santhuff had a license to possess alligator snapping turtles. The Department said he did not. Three days later, Seitz prepared an affidavit requesting a warrant to search the Santhuffs' home and property. In support of the search warrant application, Seitz showed to a Georgia Superior Court Judge some of the July 14 photographs of the Santhuffs' backyard. The judge issued the search

4

warrant that same day.

On July 21, 2005, Seitz, along with state and federal officers, executed the search warrant. The officers seized some of the Santhuffs' property, including some turtles.

B.

The Santhuffs filed a lawsuit against Seitz in his individual capacity under 42 U.S.C. § 1983. The Santhuffs make four arguments alleging that their Fourth and Fourteenth Amendment rights were violated. First, they allege that in June 2005 or on July 14, 2005, Seitz, or someone at his direction, trespassed onto their property and illegally obtained evidence that was later used to obtain a search warrant. Second, they claim that Seitz knowingly misstated or omitted material information when he applied for a warrant to search their property. Third, the Santhuffs argue that there was insufficient probable cause for the issuance of a warrant. Finally, they claim that the warrant was so broad that it constituted an impermissible general warrant.

After the Santhuffs filed their lawsuit against Seitz, in February 2006 Steve Santhuff was charged with twenty-one counts of violating various provisions of Title 27 of the Official Code of Georgia, which deals with wildlife. The criminal charges against Santhuff related to the possession of protected species of animals.

5

Meanwhile the district court stayed the Santhuffs' civil suit pending the outcome of the criminal proceedings.

A jury acquitted Santhuff of all criminal charges, and the district court lifted the stay of the Santhuffs' § 1983 suit. Near the end of the discovery period, Santhuff was deposed. He testified that he did not "have any evidence . . . that Steve Seitz walked on [my] property and took turtles from me before the search warrant."

Seitz moved for summary judgment. Suddenly, the Santhuffs did have evidence that Seitz had unlawfully entered their property and had taken turtles from them before the search warrant was issued. The new evidence came in the form of an unexpected recollection by their friend, Lance Fisher.[1] The Santhuffs' opposition to summary judgment included Fisher's affidavit dated about a month after Santhuff's deposition was taken. This was the first of Fisher's affidavits. Fisher had never been identified before as a witness who could support the Santuffs' allegation that their property had been unlawfully entered or searched.

In Fisher's first affidavit he swore that he drove past the Santhuffs' home on the afternoon of July 14, 2005 and saw two men standing by a white utility vehicle across the street from the Santhuffs' residence. He saw two other men carrying a

---

[1]Fisher testified at Santhuff's criminal trial but at that time did not mention seeing Seitz on the Santhuffs' property before the search warrant was obtained.

6

metal wash tub across the street toward the utility vehicle. According to Fisher, all of the men wore tool belts and hard hats, and the two men carrying the metal tub were Hamrick and Seitz. Fisher attested that he "did not realize who Mr. Seitz was until [he] saw him in photos available after Mr. Santhuff's deposition." Fisher attached to his affidavit the photo he claimed jogged his memory. The photo was taken on July 21, 2005, when the search warrant was executed at the Santhuffs' residence. Hamrick and two other men appear in the photo with the metal washtub. Seitz is not in that photograph.

In response to Seitz's argument that Fisher lacked personal knowledge of Seitz's identity and appearance, Fisher submitted a second affidavit.[2] In his second affidavit, Fisher reiterated that he "did not realize who Mr. Steve Seitz was until [he] saw him in photos available after Mr. Santhuff's deposition." He explained that "[i]t was not until [he] recognized Hal Hamrick with the Tub in the one photo and then saw several other photos of Steve Seitz that [he] remembered these men in front of the home of [his] friend Steve Santhuff." He also said that he had seen Seitz in court during Santhuff's criminal trial. Attached to Fisher's second affidavit was the same photo that had been attached to his first affidavit.

---

[2]The district court noted that Fisher's second affidavit "was not available" to it when it ruled on Seitz's motion for summary judgment. The court did mention the second affidavit, however, when ruling on Seitz's motion to reconsider the earlier decision denying summary judgment to Seitz.

The district court denied Seitz's motion for summary judgment.[3] It observed that the record was not carefully developed and that "[t]his is simply one of those cases where the parties have left the Court with a record scattered with factual inconsistencies and questions about what really happened here." Based on Fisher's affidavit, the district court found that there was a genuine issue of material fact about whether Seitz illegally searched the Santhuffs' property (or knew that other officers had conducted an illegal search) before he applied for and obtained a search warrant. The court determined that, without the information allegedly obtained from an illegal entry onto the Santhuffs' property, the search warrant would not have been supported by probable cause.

After Seitz's motion for summary judgment was denied, Seitz deposed Fisher. Fisher's deposition testimony conflicted with his affidavit testimony. He testified in his deposition that he did not see any photographs of Seitz. Instead, Fisher recognized Seitz from the courtroom in Steve Santhuff's criminal proceedings. He testified that the photograph attached to his first two affidavits, a

---

[3]The court granted Seitz's motion with respect to the Santhuffs' claims seeking injunctive relief because the lawsuit was brought against Seitz only in his individual capacity. See Edwards v. Wallace Comty. Coll., 49 F.3d 1517, 1524 n.9 (11th Cir. 1995) (stating that claims for injunctive or declaratory relief are considered official capacity claims against the relevant governmental entity).

8

picture in which Seitz did not appear, prompted him to recall that Seitz was the other man helping Hamrick carry the wash tub away from the Santhuffs' property. Fisher testified that he did not see any other photographs before he signed his first two affidavits.

Soon after Fisher's deposition was taken, Seitz filed a motion asking the district court to reconsider its decision denying him summary judgment. Seitz argued that Fisher's two affidavits should be disregarded because they were contradicted by his later deposition testimony. The Santhuffs submitted a third affidavit from Fisher. In his third affidavit Fisher swore that his deposition testimony about not having seen any photographs, photos, or pictures of Seitz actually referred to "printed photographs on paper." He attested that he had viewed pictures of Seitz on a computer monitor as part of a compact disc slide show made available to the Santhuffs only after Steve Santhuff's deposition.

The district court issued an opinion and order concluding that the conflict between Fisher's affidavits and his deposition testimony revealed that Fisher's affidavits were shams. It disregarded Fisher's affidavits and stated that "[n]o other evidence exists showing that [Seitz] either was on or near [the Santhuffs'] property without a search warrant or that [Seitz] knew that law enforcement officers were improperly on [the Santhuffs'] property and had improperly searched or obtained

evidence prior to Seitz obtaining and executing the search warrant." Because no other material issues of fact existed, the court granted summary judgment to Seitz. Later it issued another order awarding attorney's fees and a separate order awarding costs to Seitz. We granted the Santhuffs' motion to consolidate their appeals from those decisions.

## II.

As an initial matter, even though the Santhuffs are the appellants, they contend that we lack jurisdiction over this appeal. They argue that the district court has not entered a final order disposing of all of their claims. The Santhuffs correctly observe that in granting summary judgment to Seitz the district court focused on their argument that Seitz, or someone at his direction, trespassed into their backyard and illegally obtained evidence that was used to obtain a search warrant. The district court did not specifically address their assertions that: Seitz misstated or omitted information vital to the existence of probable cause when applying for the warrant; probable cause did not support the application for the warrant; and an impermissibly broad general warrant was issued. The Santhuffs request that we remand to the district court and instruct it to consider those unresolved "claims."

The Santhuffs confuse arguments with causes of action. "Claims are

10

separable when there is more than one possible recovery . . . or if different sorts of relief are sought." In re Southeast Banking Corp., 69 F.3d 1539, 1547 (11th Cir. 1995) (citation and quotation marks omitted). The Santhuffs' single-count complaint asserts only one basis for liability—that Seitz violated their rights under the Fourth and Fourteenth Amendments. While the complaint advances several arguments about exactly how Seitz committed those alleged violations, each of those arguments is designed to establish the Santhuffs' entitlement to the relief requested in paragraphs sixteen, seventeen, and eighteen of their complaint. Those arguments are not separate claims for relief. See Schexnaydre v. Travelers Ins. Co., 527 F.2d 855, 856 (5th Cir. 1976) ("True multiplicity is not present where, as here, the plaintiff merely presents alternative theories, drawn from the law of the same sovereign, by which the same set of facts might give rise to a single liability.").[4] Because the district court issued a final decision, we have jurisdiction over this appeal. See 28 U.S.C. § 1291.

## III.

We now turn to the merits, which we review de novo. See Fanin v. U.S. Dep't of Veterans Affairs, 572 F.3d 868, 871 (11th Cir. 2009). The Santhuffs

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

11

contend that disputed facts remain about whether Seitz participated in a warrantless search of their property or knew that a warrantless search had occurred when he completed the affidavit requesting a search warrant on July 18, 2005. They argue that the district court erred by disregarding Fisher's affidavits as shams. According to the Santhuffs, any inconsistencies between Fisher's affidavits and his deposition testimony present issues of credibility to be weighed by a jury.

We have explained that "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." Van T. Junkins & Assoc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984). In Lane v. Celotex Corp., 782 F.2d 1526 (11th Cir. 1986), we clarified that "we may only disregard an affidavit that 'contradicts, without explanation, previously given clear testimony.'" Id. at 1532 (quoting Van T. Junkins, 736 F.2d at 657); see also Tippens v. Celotex Corp., 805 F.2d 949, 955 (11th Cir. 1986) (Hill, J., specially concurring) ("The Lane decision drastically limits this court's holding in [Van T. Junkins].").  We have explained that the Van T. Junkins "rule is applied 'sparingly because of the harsh effect it may have on a party's case.'" Allen v. Bd. of Pub. Educ. for Bibb County, 495 F.3d 1306, 1316 (11th Cir. 2007) (quoting Rollins v.

12

TechSouth, Inc., 833 F.2d 1525, 1530 (11th Cir. 1987)).

Without doubt, Fisher's deposition testimony and his affidavit attestations conflict. First Santhuff testified in his deposition that he had no evidence that Seitz had entered his property and had taken turtles without a warrant. Then his friend Fisher attested that he suddenly remembered being an eyewitness to Seitz's carrying away a tub of turtles from the Santhuffs' property. Fisher attested that a picture of Hamrick and two other men as well as photos of Seitz jumpstarted his stalled memory. Then Fisher testified in his deposition that he had seen no photographs of Seitz. Then Fisher attested in a third affidavit that when he said "photographs" in his deposition, he meant ones that were printed on paper, not images of photographs that he saw on a computer or CD slide show. Unsurprisingly, the district court found that explanation unconvincing.

"[O]ur cases require a court to find some inherent inconsistency between an affidavit and a deposition before disregarding an affidavit" and state that if no such inherent inconsistency exists, "any conflict or discrepancy between the two documents can be brought out at trial and considered by the trier of fact." Rollins v. TechSouth, Inc., 833 F.2d 1525, 1530 (11th Cir. 1987). We have also said that "[a] definite distinction must be made between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to

13

the weight of the evidence." Tippens, 805 F.2d at 953. Fisher's contradictory statements constitute an inherent inconsistency creating a transparent sham. Id.

Fisher's third affidavit does not offer an adequate explanation for the discrepancy between Fisher's first two affidavits and his deposition testimony. Fisher twice attested that he had seen photographs of Seitz. Then he repeatedly testified in his deposition that he had not. Then he attested that he was referring to "printed photographs on paper," not pictures in a slide show displayed on a computer monitor. It simply cannot be that in his first two affidavits Fisher understood the word "photograph" to mean pictures stored on the computer, but in his deposition he understood it to mean only printed images on paper. That is not a plausible explanation. See Van T. Junkins, 736 F.2d at 656 ("[A] district court may find an affidavit which contradicts testimony on deposition a sham when the party merely contradicts its prior testimony without giving any valid explanation.").

We recognize that Fisher was not a party to this lawsuit, and "we have never squarely addressed whether, and in what circumstances, a district court may disregard the affidavit of a non-party that is inherently inconsistent with deposition testimony given by the non-party previously in the same case," Reese v. Herbert, 527 F.3d 1253, 1270 n.28 (11th Cir. 2008). We see no reason, however, to refuse

14

to apply the sham rule under the particular facts of this case.  A sham is a sham.  See Adelman-Tremblay v. Jewel Cos., 859 F.2d 517, 521 (7th Cir. 1988) ("The purpose of summary judgment motions—to weed out unfounded claims, specious denials, and sham defenses—is served by a rule that prevents a party from creating issues of credibility by allowing one of its witnesses to contradict his own prior testimony.") (quotation marks and citation omitted).  The conflict between Fisher's first two affidavits and his deposition testimony was so direct and his explanation for the conflict was so implausible that it would defy logic not to apply the sham rule here.  The discrepancies are even more glaring in light of Santhuff's own earlier deposition testimony that he had no evidence that Seitz unlawfully entered the Santhuffs' property and took turtles.  Evidence that suddenly appeared after Santhuff's deposition in the form of Fisher's unexpected recollection turned out to be implausible at its core.  The fact that the sham evidence came from a non-party does not change the implausibility of it.

Fisher's deposition testimony conflicted with his first two affidavits, and his third affidavit offered no plausible explanation for the conflict.  The district court did not err by disregarding Fisher's sham affidavits.  Furthermore, summary judgment in favor of Seitz was proper because no genuine issue of material fact remained after Fisher's affidavits were found to be a sham.

**IV.**

After Seitz prevailed on his motion to reconsider, he filed a motion requesting $51,485 in attorney's fees under 42 U.S.C. § 1988, 28 U.S.C. § 1927, Fed. R. Civ. P. 54(d)(2)(B), and LR 54.2, NDGa. He sought fees from the date that the Santhuffs submitted Fisher's first affidavit with their opposition to summary judgment. The Santhuffs argued that Fisher's affidavits were explanatory instead of contradictory and that the affidavits did not make the pursuit of the litigation frivolous.

The district court found that Seitz was entitled to an award of attorney's fees because the Santhuffs continued the litigation after they were put on notice that Fisher's testimony was fabricated. Fisher had testified in two sworn affidavits that he had seen photographs of Seitz, testified in his deposition that he had not seen photographs of Seitz, and "fantastically explained" in a third affidavit that what he meant in his deposition testimony was that he had not seen any "print" photographs but had only seen photographs of Seitz on the computer. The district court found it "disturbing[]" that Fisher testified in his deposition that he did not discuss his testimony in the first two affidavits with plaintiffs' counsel. The court determined that the Santhuffs' "counsel should have investigated Fisher's statements when he submitted his first and second affidavits" and should have stopped litigating the

16

case after Fisher's deposition testimony revealed that his "statements were manipulated."

The court concluded that Seitz was entitled to attorney's fees from the time that Fisher's first affidavit was filed because at that point the Santhuffs' claims were frivolous, unreasonable, and without foundation. See Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421, 98 S.Ct. 694, 700 (1978) ("[A] district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."); Hughes v. Rowe, 449 U.S. 5, 14, 101 S.Ct. 173, 178 (1980) (applying Christiansburg to § 1983 claims). The court found that the Santhuffs "were complicit in the submission of Fisher's affidavit." After Fisher's deposition, the Santhuffs' counsel "should have been aware of the untruthfulness of Fisher's testimony." The court, therefore, held the Santhuffs and their counsel jointly responsible for paying the attorney's fees incurred from the date of Fisher's deposition, March 23, 2009.

The court accepted the hourly rate of $250 requested by Seitz's counsel as a reasonable, "if not slightly low," rate for the Atlanta market. It reduced the number of hours claimed by 53 for a total of 152.94 hours, resulting in a fee award of $38,235. The court found that 41.08 hours were incurred after the date of

Fisher's deposition, so the Santhuffs' and their counsel were jointly responsible for $10,270 of the $38,235 award. In a separate order, the district court awarded Seitz costs in the amount of $6,135.62 under Fed. R. Civ. P. 54(d)(1).

"We review awards of attorney's fees and costs for abuse of discretion, revisiting questions of law de novo and reviewing findings of fact for clear error." Kahane v. UNUM Life Ins. Co., 563 F.3d 1210, 1213 (11th Cir. 2009). In a § 1983 action, a district court may, "in its discretion, . . . allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. A district court may award reasonable attorney's fees to a prevailing defendant under § 1988 if it finds that the plaintiff's claims were frivolous, unreasonable, and without foundation, regardless of bad faith. See Christiansburg Garment Co., 434 U.S. at 421, 98 S.Ct. at 700; Hughes, 449 U.S. at 14, 101 S.Ct. at 178.

A different standard, however, applies to an award of attorney's fees under 28 U.S.C. § 1927. We have explained:

> Section 1927 provides, in pertinent part, that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Under the plain language of the statute, then, in order for a court to justify sanctions, it must find that three conditions apply:
>
> First, the attorney must engage in "unreasonable and vexatious" conduct. Second, that "unreasonable and vexatious" conduct must be

18

conduct that "multiplies the proceedings." Finally, the dollar amount of the sanction must bear a financial nexus to the excess proceedings, i.e., the sanction may not exceed the "costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

Hudson v. Int'l Computer Negotiations, Inc., 499 F.3d 1252, 1261–62 (11th Cir. 2007) (quoting Peterson v. BMI Refractories, 124 F.3d 1386, 1396 (11th Cir.1997)). "We have consistently held that an attorney multiplies proceedings unreasonably and vexatiously within the meaning of the statute only when the attorney's conduct is so egregious that it is tantamount to bad faith." Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1239 (11th Cir. 2007) (quotation marks omitted).

In the present case, the record shows that the district court did not abuse its discretion in awarding attorney's fees to Seitz under § 1988 based on its finding that Fisher's affidavits were a sham.[5] The court, however, did not state whether it was holding counsel jointly responsible for $10,270 in fees under § 1988 or § 1927. The Santhuffs correctly point out that it is incorrect to hold counsel accountable for fees under § 1988. See Roadway Exp., Inc. v. Piper, 447 U.S. 752, 761 n.9, 100 S.Ct. 2455, 2461 n.9 (1980) (The Senate Report accompanying §

---

[5]The Santhuffs contend that the district court was required to hold an evidentiary hearing before deciding whether to award attorney's fees. "Occasionally, evidentiary hearings are necessary." Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988). A hearing, however, is not absolutely required. See id.

1988 stated that the bill authorizes 'an award of attorneys' fees against a <u>party</u> . . . .' S. Rep. No.94-1011, p.5 (1976), U.S. Code Cong. & Admin. News 1976, p.5912 (emphasis supplied). This reference reinforces the view that the statute was not intended to permit recovery from opposing counsel."). If the court intended to hold counsel jointly responsible for fees under § 1927, it needed to do so based on a finding that all of the § 1927 requirements, including the existence of bad faith, were satisfied. See <u>Hudson</u>, 499 F.3d at 1261–62. Because the district court did not specifically address the requirements of § 1927, we have an insufficient record to review its decision holding the Santhuffs' counsel jointly liable for $10,270 in attorney's fees, and a limited remand is necessary. See <u>Carmichael v. Birmingham Saw Works</u>, 738 F.2d 1126, 1139 (11th Cir. 1984) (remanding for the parties and the court to "produce a record of adequate detail to permit meaningful and efficient review"). On remand the district court should determine whether under § 1927 the Santhuffs' counsel is jointly liable for those fees that were incurred by Seitz after Fisher's deposition was taken.

**AFFIRMED in part, VACATED and REMANDED in part.**