Sarah M. PETERSON, Plaintiff–Appellant,

v.

The BOARD OF TRUSTEES OF THE UNIVERSITY OF ALABAMA, Defendant, University of Alabama Health Services Foundation, P.C., Defendant–Appellee.

No. 14–14932
Non–Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

March 2, 2016.

Jeffrey W. Bennitt, Jeff W. Bennitt & Associates, LLC, Birmingham, AL, Terrell Eugene McCants, The McCants Law Firm, Birmingham, AL, for Plaintiff–Appellant.

Anne Regina Yuengert, Anne Knox Averitt, Bradley Arant Boult Cummings, LLP, Birmingham, AL, Donna Smith Cude, John D. Saxon, PC, Birmingham, AL, for Defendant–Appellee.

Before WILSON, MARTIN and ROSENBAUM, Circuit Judges.

PER CURIAM:

Sarah Peterson, an African–American woman, sued her former employer, the University of Alabama Health Services Foundation, P.C. ("UAHSF"), for racial discrimination and retaliation under 42 U.S.C. §§ 2000e, 1981, and 1983, as well as for workers' compensation retaliation under Alabama Code § 25–5–11.1. She appeals the district court's grant of summary judgment against her. First, Peterson argues that the district court abused its discretion by rejecting as hearsay portions of

a coworker's affidavit. Second, she contends that she proved UAHSF's reasons for firing her were pretexts for racial discrimination. Third, she claims that she showed a causal connection between her protected activity and her termination, and thus she presented a prima facie case of retaliation. Finally, she asserts that she presented a prima facie case of workers' compensation retaliation under state law. After careful consideration, we affirm.

## I.

At the time of the events in question, Peterson was a check-out receptionist in UAHSF's dermatology clinic. In late 2011, she began reporting to a new supervisor, Erika Sanso. Sanso says she almost immediately began receiving complaints from customers and coworkers about Peterson's behavior and job performance. Sanso also determined that Peterson mistakenly gave one patient another patient's discharge summary, which violated federal law as well as UAHSF's policies.[1] Sanso issued Peterson a written warning on May 18, 2012. The warning addressed Peterson's breach of patient confidentiality as well as other concerns about her overtime accrual, productivity, customer service, teamwork, and communication.

Shortly after Peterson began reporting to Sanso, Peterson complained to a superior about Sanso. Peterson stated that Sanso was "very short and rude" and this behavior created a "hostile environment." Peterson's complaint was motivated by her perception—allegedly shared by some of her African–American colleagues—that Sanso, a white woman, treated white employees better than she treated African–American employees. Sanso claims not to have learned of this concern, however, until a meeting on May 22, 2012. During this meeting, Peterson shared her concerns with Sanso. The meeting "ended with [Peterson and Sanso] agreeing to work with each other."

On June 4, 2012, Peterson was issued a final warning for a second patient privacy violation. Once again, she had given a discharge summary to the wrong patient during check-out. Peterson did not deny making this mistake, though she disagreed with the way she was disciplined.

On June 19, 2012, Peterson went on medical leave to have surgery on her shoulder, which she had injured when she fell from her office chair. With Sanso's permission, Peterson had been visiting the doctor and doing physical therapy several times a week. When she returned from leave in early July, she was eventually moved from the check-out station to light duty in the medical records department. Peterson continued her follow-up doctor's visits and physical therapy.

Around the same time, Peterson filed an EEOC charge against UAHSF. In the charge, she accused Sanso of disparate treatment of black and white employees, specifically referencing her discipline for the discharge summary mix-up and how Sanso reacted to her taking breaks.

Peterson continued to experience problems with her coworkers. On August 22, 2012, she e-mailed Sanso about "offensive" treatment by other employees, which she said created a "hostile environment." Sanso responded by arranging one-on-one meetings between Peterson and each of the allegedly offensive employees. After the meetings, Peterson said she "would do [her] best to get along with everybody," but she felt that nothing changed.

---

1. According to Joan Wilson, a human resources administrator at UAHSF, this violation could have independently justified Peterson's termination.

In October 2012, Sanso completed Peterson's performance evaluation. She rated Peterson as having met only "some expectations" in various categories—such a rating is "less than satisfactory." Peterson mostly disagreed with these ratings and with Sanso's written comments accompanying them, though Peterson admitted to the two patient privacy violations and to having disagreements with coworkers.

In December 2012, Sanso claims to have received another complaint about Peterson from an African–American employee named Ashley Carter. Carter complained that Peterson generally shirked her duties, creating an unfair distribution of work. The next month, Sanso claims to have received further reports that Peterson's performance was inadequate. For instance, a secret shopper[2] as well as an employee in another department notified Sanso that Peterson was still not verifying patient identity at check-out, sometimes resulting in the clinic getting bad checks. Carter continued to complain about Peterson's relative lack of productivity. Sanso verified that Carter seemed to be processing significantly more payments than Peterson.

On January 11, 2013, Sanso had a final meeting with Peterson. Peterson was warned that she was the common denominator in all the coworker conflicts, and future problematic behavior "would not be tolerated." On January 28, 2013, Sanso noticed that the check-out desk was unattended during Peterson's shift for approximately 10 minutes. Two days later, Sanso terminated Peterson's employment at UAHSF based on "ongoing interpersonal conflicts, patient complaints and job performance."

## II.

Peterson challenges several aspects of the district court's grant of summary judgment against her. We address each in turn.

### A. *Exclusion of Hearsay*

■ A district court's rulings on the admissibility of hearsay evidence are reviewed for abuse of discretion. *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 556 (11th Cir.1998). The district court excluded portions of an affidavit from one of Peterson's coworkers as hearsay. In the relevant paragraphs, the affiant repeated complaints about Sanso that she had allegedly heard from other African–American employees. These secondhand statements were offered as evidence of Sanso's racist behavior, but they were not corroborated by any direct testimony from the people who purportedly complained. The statements were merely based on conversations that the affiant claimed to have had with different people.

Hearsay is a statement, other than one made by the declarant, offered to prove the truth of the matter asserted. Fed. R.Evid. 801(c). Peterson has not advanced any argument or evidence to suggest why the statements here—which the affiant repeated secondhand as evidence of Sanso's alleged racism—do not squarely qualify as inadmissible hearsay. Instead, she simply discusses the probative value of the evidence. This is irrelevant if the statements are inadmissible hearsay. The district court did not abuse its discretion in excluding these portions of the affidavit as hearsay.

### B. *Racial Discrimination Claim*

We review *de novo* the district court's grant of summary judgment, considering

---

**2.** "Secret shoppers" are persons paid to visit a business like an ordinary customer and then rate their experience, usually providing their review to the business being rated.

the evidence in the light most favorable to the non-movant. *Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir.2008). The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990) (quotation omitted).

Title VII and §§ 1981 and 1983 prohibit employers from discriminating against employees on the basis of their race. *See* 42 U.S.C. §§ 2000e–2(a), 1981, 1983. Claims under §§ 1981 and 1983 have the same elements of proof and analytical framework as claims under Title VII. *See Stallworth v. Shuler*, 777 F.2d 1431, 1433 (11th Cir.1985). A plaintiff may attempt to show intentional discrimination under these statutes through either direct or circumstantial evidence. *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir.1999). In evalu-

ating single-motive discrimination claims supported by circumstantial evidence, we use the framework provided by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[3] *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir.2004).

Under *McDonnell Douglas*, once the plaintiff establishes a prima facie case, the employer must articulate one or more legitimate, nondiscriminatory reasons for its actions. *Id.* Next, the burden shifts back to the plaintiff, who must offer evidence that the employer's reasons are pretexts for illegal discrimination. *Id.* To show pretext, the plaintiff must demonstrate both that the employer's stated reason for the employment decision was false and that discrimination was the real reason. *Springer v. Convergys Customer Mgmt. Grp., Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (per curiam). The plaintiff must present "significant probative evidence" of pretext to avoid summary judgment. *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir.1996) (quotation omitted). Importantly, when an employer of-

---

**3.** Peterson argues for the first time on appeal that the district court should not have applied the *McDonnell Douglas* framework because this is a mixed-motives case. Peterson claims that she can proceed under a mixed-motives theory because the district court found an issue of fact as to whether Sanso's concern about her productivity was sufficient to motivate her termination.

This Court recently decided that the *McDonnell Douglas* framework is not appropriate for examining mixed-motives claims at the summary judgment stage. *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227 (11th Cir.2016). Instead, we should determine whether the plaintiff "has presented sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that her protected characteristic was a motivating factor for an adverse employment decision." *Id.* at 1239 (quotation omitted) (alterations adopted).

Peterson has not carried this burden. Even assuming without deciding that she properly preserved this issue, she misreads the district court's finding. While the court speculated that Peterson's apparently lesser performance in processing payments may have been due to a change in her job responsibilities, the court did not further find that this reflected evidence of discrimination by Sanso. The court merely found that this reason, standing alone, may have been "insufficient to motivate Sanso to terminate Peterson." But Sanso had other reasons to question Peterson's job performance, including complaints from customers and coworkers. Without other evidence of discrimination, Sanso's possibly mistaken assessment of Peterson's performance in processing payments is not proof that "illegal bias played a role in [UAHSF's] decision." *Id.* at 1241. The assessment may have been a *mistaken* input in the decisional process, but Peterson has not shown that it was a *discriminatory* input. *See id.*

fers more than one legitimate, nondiscriminatory reason for the decision, the plaintiff must rebut each reason. *Crawford v. City of Fairburn,* 482 F.3d 1305, 1308 (11th Cir.2007).

■ Peterson failed to present evidence that UAHSF's proffered nondiscriminatory reasons for firing her were pretextual. UAHSF listed Peterson's two patient privacy violations as reasons for terminating her, and Peterson admitted to these violations. Nor does Peterson deny that a number of her coworkers complained about her and that she repeatedly met with management to address interpersonal conflicts in the workplace. And Peterson presented no evidence to rebut UAHSF's assertion that several checks she processed were returned because she had not gotten proper identification. Thus, we affirm the district court's grant of summary judgment as to Peterson's Title VII and §§ 1981 and 1983 racial discrimination claims.

## C. *Retaliation Claim*

The anti-retaliation provision of Title VII forbids an employer from retaliating against an employee because she has opposed "an unlawful employment practice." 42 U.S.C. § 2000e–3(a). Retaliation claims are also cognizable under § 1981. *CBOCS W., Inc. v. Humphries,* 553 U.S. 442, 451, 128 S.Ct. 1951, 1958, 170 L.Ed.2d 864 (2008). To establish a retaliation claim, a plaintiff must show that: (1) she engaged in a statutorily protected activity; (2) she suffered a materially adverse employment action; and (3) there was a causal connection between the two events. *Goldsmith v. Bagby Elevator Co.,* 513 F.3d 1261, 1277 (11th Cir.2008). Whereas very close temporal proximity between the protected activity and the adverse action may indicate causation, a substantial delay between the two events—with no other evidence of causation—means no causal connection has

been shown. *See Clark Cty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273–74, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001) (per curiam); *see also Thomas v. Cooper Lighting, Inc.,* 506 F.3d 1361, 1364 (11th Cir. 2007) (per curiam) ("A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough.").

■ Peterson failed to make out a prima facie retaliation case because she did not present evidence of a causal connection between her protected activity and her termination. Peterson was terminated over six months after she filed her EEOC charge and over a year after she first complained to superiors about Sanso. Without other evidence showing a causal connection, this extended delay was fatal to Peterson's retaliation claim. *See Thomas,* 506 F.3d at 1364. We affirm the district court's grant of summary judgment on this claim.

## D. *Workers' Compensation Retaliation Claim*

Under Alabama law, "[n]o employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits." Ala.Code § 25–5–11.1. To make out a prima facie claim under this statute, a plaintiff must prove: (1) an employment relationship; (2) an on-the-job injury; (3) her employer's knowledge of the injury, and (4) termination based *solely* on her injury and her filing of a workers' compensation claim. *Flint Constr. Co. v. Hall,* 904 So.2d 236, 247 (Ala.2004). To prove the final element—causation—the Alabama Supreme Court has identified several factors that can be considered as circumstantial evidence. *See Ala. Power Co. v. Aldridge,* 854 So.2d 554, 564–65 (Ala. 2002). These include the temporal proximity between the filing of the claim and

the termination, an employer's negative attitude toward the employee's injury, an employer's failure to adhere to company policy, sudden changes in an employee's evaluations after the claim, and evidence that the stated reason for discharge was false. *Id.*

Peterson failed to establish that her termination was based solely on her on-the-job injury and her filing of a workers' compensation claim. She did not present evidence of any of the probative factors—to the contrary, Sanso seems to have approved Peterson's weekly treatments and moved her to light duty to accommodate her condition. And as previously discussed, Peterson did not show that the reasons offered for her termination were pretextual. Thus, we affirm the district court's grant of summary judgment on Peterson's workers' compensation retaliation claim.

After careful consideration of the record and the parties' briefs, we AFFIRM.

**AFFIRMED.**