IN RE: Ronald Edward SCIORTINO, Debtor.

Ronald Edward Sciortino, Plaintiff,

v.

Gwinnett County Department of Water Resources and Gwinnett County, Defendants.

CASE NO. 14–71765–BEM
ADVERSARY PROCEEDING
NO. 15–5356–BEM

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Signed September 19, 2016

Filed 09/20/2016

Ronald Edward Sciortino, pro se.

John Heard, pro se.

Lynette Howard, pro se.

Albert F. Nasuti, Michael Brian Pugh, Thompson O'Brien Kemp & Nasuti, P.C., Norcross, GA, Michael J. Bargar, Arnall Golden Gregory, LLP, N.W. Atlanta, GA, for Defendant.

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND NOTICE OF TRIAL

Barbara Ellis–Monro, U.S. Bankruptcy Court Judge

This matter comes before the Court on the Remaining Defendants' Motion for Summary Judgment (the "Motion") [Docs. 99], Affidavit of Carol Buck (the "Affidavit") [Doc. 100], the Remaining Defendants' Statement of Undisputed Material Facts (the "Statement of Facts") [Doc. 101], Memorandum of Law in Support of the Remaining Defendants' Motion for Summary Judgment (the "Brief") [Doc. 102], Plaintiff's Motion to Deny the Remaining Gwinnett County Defendants Motion for Summery [sic] Judgment (the "Opposition to Summary Judgment") [Doc. 104], Plaintiff's Counter Affidavit to the Affidavit of Carol Buck (the "Counter Affidavit") [Doc. 105], Plaintiff's Counter Affidavit to the Remaining Defendants Statement of Undisputed Material Facts (the "Response to Statement of Facts" and with the Opposition to Summary Judgment and the Counter Affidavit, the "Response") [Doc. 106], and Defendants' Reply to the Response (the "Reply") [Doc. 109].[1] The remaining issue in this proceeding[2] is whether Defendants Gwinnett County Department of Water Resources (the "Water Department") and Gwinnett County (the "County" and with the Water Department, the "Defendants") violated the automatic stay by sending Plaintiff an invoice for prepetition water service. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(G), (O), and the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b).

## I. Summary Judgment Standard

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. The Rule requires the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When, as in this proceeding, "the nonmoving party bears the burden of proof at trial, the moving party may discharge this 'initial responsibility' by showing that there is an absence of evidence to support the nonmoving party's case or by showing that the nonmoving party will be unable to prove its case at trial." *Hickson Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). The movant is required to file a separate statement of facts, numbered separately, as to which it contends there are no genuine issues to be tried. BLR 7056–1(a)(1). The respondent is required to file a statement of facts, numbered separately, "to which the respondent contends a genuine issue exists to be tried." *Id.* 7056–1(a)(2). The respondent "may not rest upon the mere allegations or denials in its pleadings" but "must set forth specific facts showing that there is a genuine issue for trial. A mere 'scintilla' of evidence supporting the opposing party's position will not suffice[.]" *Walker v. Dar-*

---

1. Plaintiff's Opposition to Summary Judgment states that Plaintiff contemporaneously filed a "Counter Affidavit to the Memorandum of Law in Support of the Remaining Defendants' Motion for Summery Judgment." [Doc. 104 at 5–6]. In their Reply, Defendants acknowledge being served with Plaintiff's Counter Affidavit to the Memorandum of Law, but note that it does not appear on the docket and is not part of the record. [Doc. 109 n.2]. Defendants are correct that no Counter Affidavit to the Memorandum of Law by Plaintiff has been filed in this proceeding or otherwise received by the Court.

2. Several claims and parties have been dismissed due to lack of jurisdiction and inability to state a claim. [Doc. Nos. 57, 79].

*by,* 911 F.2d 1573, 1576–77 (11th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)). Any material facts not controverted by the respondent are deemed admitted. BLR 7056–1(a)(2). The Court will only grant summary judgment when the evidence, viewed in the light most favorable to the nonmoving party shows no genuine dispute of material fact. *Tippens v. Celotex Corp.,* 805 F.2d 949, 954 (11th Cir. 1986). A fact is material if it "might affect the outcome of the suit under the governing law ...." *Anderson,* 477 U.S. at 248, 106 S. Ct. at 2510. A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Facts set forth in the statement of facts must be supported by "citing to particular parts of materials in the record, including ... affidavits ...." Fed. R. Civ. P. 56(c)(1). Affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.* 56(c)(4). With respect to personal knowledge, the affidavit must state the basis for the personal knowledge, which "can be based on a review of relevant business files and records." *Duke v. Nationstar Mortgage, LLC,* 893 F.Supp.2d 1238, 1244 (N.D. Ala. 2012). Competency "may be reasonably inferred from [the affiant's] high level position." *Id.* at 1245. The admissibility of documents attached to an affidavit may be established by the affiant's "undisputed statement that the referenced documents are kept in the course of ... regularly conducted business activity, and that it is part of the regular practice to create such documents ...." *Id.* The respondent "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). However, at the summary judg-ment stage the Court " 'must not resolve factual disputes by weighing conflicting evidence.' " *Tippens,* 805 F.2d at 953 (quoting *Lane v. Celotex Corp.,* 782 F.2d 1526, 1528 (11th Cir. 1986)). If a party raises questions about the accuracy of an affidavit, the Court must determine whether any errors or discrepancies create a transparent sham or rather raise issues of credibility. *Id.* Only those affidavits shown to be shams may be disregarded. *Id.* Furthermore, "the court may consider any admissible facts and disregard any inadmissible statements occurring in the same affidavit." *Devan v. Zamoiski Southeast, Inc. (In re Merry–Go–Round Enter., Inc.),* 272 B.R. 140, 145 (Bankr. D. Md. 2000); *see also Peterson v. Board of Trustees of the Univ. of Ala.,* 644 Fed.Appx. 951, 954 (11th Cir. 2016).

## II. Legal Standard for Violation of the Automatic Stay

■ The sole question remaining in this proceeding is whether Defendants willfully violated the automatic stay by sending Plaintiff an account statement for prepetition water service provided from October 14, 2014 through November 3, 2014 (the "November Invoice"). Section 362(a)(6) of the Bankruptcy Code prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]" Pursuant to § 362(k)(1), "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." A stay violation is willful if Defendants "(1) knew the automatic stay was invoked and (2) intended the actions which violated the stay." *Jove Engineering, Inc. v. I.R.S.,* 92 F.3d 1539, 1555 (11th Cir. 1996). In addition to showing a stay violation and willful-

ness, Plaintiff must show he was injured by the stay violation. *Hutchings v. Ocwen Federal Bank, FSB, Banc One, N.A. (In re Hutchings)*, 348 B.R. 847, 901–02 (Bankr. N.D. Ala. 2006).

## III. Undisputed Facts

### 1. Overview

Defendants assert the following as undisputed material facts: Immediately prior to November 3, 2014, Plaintiff maintained an account with the last four digits of 5094 ("Account 5094" or the "Prepetition Account") through the Water Department for water service for his residence at 6038 Eagles Rest Trail, Sugar Hill, Georgia (the "Property"). [Doc. 101 ¶ 1]. As of November 3, 2014, the Water Department had shut off water service to the Property due to delinquency on Account 5094. [*Id.* ¶ 2].

On November 3, 2014, Plaintiff filed a Chapter 13 petition, case no. 14–71765. [*Id.* ¶ 3]. On November 4, 2014, Plaintiff called the Water Department to notify it of the bankruptcy filing. [*Id.* ¶ 4]. Also on November 4, 2014, Plaintiff sent an email to the Water Department and asked that water service be turned on at the Property. Attached to the email were a notice of bankruptcy case filing and a creditor matrix for the bankruptcy case. [*Id.* ¶ 5]. Upon receipt of notice of the bankruptcy filing, the Water Department closed Account 5094 as of the petition date and created a new account with the last four digits 2879 ("Account 2879" or the "Postpetition Account") with an effective date of November 4, 2014. [*Id.* ¶ 6]. On November 4, 2014, the Water Department restored water service to the Property. [*Id.* ¶ 7].

On November 5, 2014, the Water Department generated the November Invoice, which reflected all amounts owed for

prepetition water services as of November 3, 2014. [*Id.* ¶ 8]. Also on November 5, 2014, the Water Department wrote a letter to Plaintiff explaining that Account 5094 was closed as of the petition date and replaced with new Account 2879 (the "Letter"). [*Id.* ¶ 9]. Also on November 5, 2014, the Water Department mailed the November Invoice and the Letter to Plaintiff at the Property address, along with a copy of the Water Department's Bankruptcy Guidelines (the "Guidelines" and with the November Invoice and the Letter, the "Final Statement") [*Id.* ¶ 10]. The Final Statement was mailed to Plaintiff and did not include a return envelope because Plaintiff was not required to pay the balance of Account 5094 provided that the balance was discharged in the bankruptcy case. [*Id.* ¶ 11]. The Final Statement did not threaten to disconnect service if the balance of Account 5094 was not timely paid. [*Id.* ¶ 12].

Plaintiff did not contact the Water Department upon his receipt of the Final Statement. The next time the Water Department received any communication from Plaintiff was two months later, on January 8, 2015, when the County received mailed correspondence from Plaintiff disputing charges on Account 2879. The next communication from Plaintiff after that was on March 4, 2015, after the Water Department disconnected water service to the Property for nonpayment of postpetition service on Account 2879. [*Id.* ¶ 13].

Defendants' Statement of Facts cites solely to the Affidavit of Carol Buck ("Buck") to support the facts. According to the Affidavit, Buck is the Manager of the Customer Care Section for the Water Department. [Doc. 100 ¶ 2]. Buck states that she [3] is familiar with the account of Plain-

---

3. The Affidavit uses the adjective "his" in reference to Buck [Doc. 100 p. 1] while Defendants' Reply uses the pronoun "she." [Doc.

tiff and that the facts she asserts "are based upon my personal knowledge and/or the business records attached hereto." [*Id.*]. Attached to the Affidavit are copies of the November Invoice, the Letter, and the Guidelines. [Affidavit, ex. 1, 2, 3].

Plaintiff's Response does not include a statement of facts to which he contends a genuine issue exists to be tried. Instead, he challenges the sufficiency of the Statement of Facts and the Affidavit on a number of grounds. First, with respect to the Statement of Facts, Plaintiff contends each paragraph, from paragraph 1 to 13, "makes unsupported contentions of material fact that are not sufficient on motion for summary judgment." [Doc. 106 ¶ 4–16].

Second, with respect to the Affidavit, Plaintiff contends: (1) it contains unverified statements by Buck; (2) it was not made under oath or under penalty of perjury; (3) the individual who notarized the Affidavit did not verify the statements in the Affidavit were made by Buck; (4) it does not show the competency of Buck to make an affidavit or to testify as to the delinquency on Account 5094; (5) it includes vague statements, including the use of the phrase "I am" in paragraphs 1 and 2; (6) it insufficiently identifies the affiant; (7) it misuses the word "residence"; (8) it includes statements not based on firsthand knowledge of Buck; (9) it includes statements that are hearsay; (10) it includes a recitation of facts taken from the record in Plaintiff's bankruptcy case; (11) it contains unsupported statements; (12) it includes erroneous and conflicting information about the date Account 5094 was closed, the date Account 2879 was created, the date the November Invoice was created, and the date Plaintiff's water service was restored; and (13) the Affidavit was submitted in bad faith with intent to de-

ceive the Court and delay justice. [Docs. 104, 105]

Third, with respect to the exhibits attached to the Affidavit, Plaintiff contends (1) the November Invoice attached to the Affidavit is a forgery as shown by wrong entries for account numbers; (2) the November Invoice contains eight separate items that are wrongfully applied; (3) the Letter attached to the Affidavit is not a true and correct copy of the letter received by Plaintiff; and (4) the Guidelines attached to the Affidavit is a forgery as it differs from the document received by Plaintiff. [Docs. 104, 105].

**2. Dispute of Material Facts**

Plaintiff's primary argument against the Statement of Facts is that each contention of fact is unsupported and insufficient for summary judgment. This argument is without merit. Each assertion of fact in the Statement of Facts is accompanied by a citation to the Affidavit. A review of each citation shows that every assertion of fact is directly supported by the Affidavit. Although Plaintiff has raised a number of evidentiary issues with respect to the Affidavit and attached documents, he only specifically contests two facts—the effective date of the Postpetition Account and the date his water service was restored. [Doc. 105 ¶¶ 20, 25, 27–28].

With respect to the effective date of the Postpetition Account, the Statement of Facts contends that Account 5094 was closed as of the petition date, which was November 3, 2014, and Account 2879 was effective as of November 4, 2014. [Doc. 101 ¶ 6; Doc. 100 ¶ 9]. Plaintiff contends Account 2879 was effective as of November 5, 2014, rather than November 4. He bases this argument on language in the November Invoice stating that it includes "Pay-

109 p. 5]. The Court will take Defendants' cue          in references to Buck.

ments Posted Through 11/05/2014." [Doc. 100, ex. 1]. But that language merely reflects how the balance on the November Invoice for the *Prepetition* Account was calculated; it has no bearing on the effective date of the *Postpetition* Account.

Plaintiff attached an account statement from the Postpetition Account in support of his argument (the "Postpetition Statement"). [Doc. 105, ex. A]. The Postpetition Statement is for billing period November 2014 and states that it includes "Payments Posted Through 11/19/2014." [*Id.*] However, it also states that the water usage was billed from "*11/04/2014* thru 11/10/2014." [*Id.* (emphasis added)]. This is consistent with the November Invoice for the Prepetition Account, which indicates it is for water usage billed from "10/14/14 thru 11/03/14." [Doc. 100, ex. 1] Thus, the Postpetition Statement supports rather than undermines the factual contention that the Postpetition Account was effective as of November 4, 2014. Accordingly, Plaintiff has failed to show a genuine dispute of fact with respect to the effective date of the Postpetition Account.[4]

■ With respect to restoration of water service, the Statement of Facts states that Defendants restored Plaintiff's water service on November 4, 2014. [Doc. 101 ¶ 7; Doc. 100 ¶ 10]. Plaintiff contends his water service was not restored until November 5, 2014. [Doc. 105 ¶ 25]. The only document in the record that supports Plaintiff's assertion is a copy of the Guidelines Plaintiff attached to his Response. Plaintiff's copy of the Guidelines differs from the copy of the Guidelines attached to the Affidavit in that it provides that when water service has been disconnected for nonpayment, service "will be restored *next*

business day after receipt of the necessary payment . . . ." [Doc. 105, ex. C (emphasis added)]. By contrast, the Guidelines attached to the Affidavit provide that "water service will be restored the *same* business days after receipt of the payment . . . ." [Doc. 100, ex. 3 (emphasis added)]. Because the parties produced two different versions of the Guidelines with different policies for when service is to be restored, the Court finds Plaintiff has shown a dispute of fact as to the date Defendants restored water service. However, this fact is not a material fact. It has no relevance to the question whether Defendants violated the stay by sending the November Invoice and does not affect whether Defendants are entitled to summary judgment.

### 3. Admissibility of Defendants' Evidence

■ While Plaintiff has not shown a dispute as to any *material* fact, he has raised questions as to the admissibility of the evidence submitted by Defendants in support of the Motion. In fact, he separately challenges every paragraph of the Affidavit as well as all three attachments. On a motion for summary judgment, the Court "may consider only that evidence which can be reduced to an admissible form." *Rowell v. Bellsouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005). Therefore, to the extent Plaintiff shows any evidence supplied by Defendants would be inadmissible, the relevant portion of the evidence must be excluded from consideration on summary judgment.

■ Beginning with the documents attached to the Affidavit, Exhibit 1 is the November Invoice. Plaintiff claims it is a

---

4. Because the effective date of the Postpetition Account is not relevant to the question whether Defendants violated the stay by sending the November Invoice, it is not a material

fact. Therefore, even if Plaintiff showed a genuine dispute about the date, it would not affect the outcome of the Motion.

forgery because of changes in the account number. [Doc. 105 ¶ 33–35]. Plaintiff refers to a copy of the invoice he filed with his amended complaint for comparison. [Doc. 29, ex. AA(A) ]. The account number appears in two locations on the November Invoice: in the "Customer Information" section and on the payment coupon. Defendants redacted the account number and the water meter number to their last four digits on the November Invoice attached to the Affidavit. Debtor provided an unredacted copy with his amended complaint. Federal Rule of Bankruptcy Procedure 9037(a)(4) provides that "[u]nless the court orders otherwise, in an electronic or paper filing made with the court that contains ... a financial-account number, a party or nonparty making the filing may include only: ... (4) the last four digits of the financial-account number." Fed. R. Bankr. P. 9037(a)(4); *In re Chubb*, 426 B.R. 695, 699–700 (Bankr. E.D. Mich. 2010) (requiring energy company account number to be redacted). While it appears Plaintiff waived the protection of the redaction requirement for the November Invoice by filing an unredacted copy, the fact that Defendants redacted the document in accordance with a Rule does not establish that it is a forgery; it merely shows their efforts to comply with the Rules. *See* Fed. R. Bankr. P. 9037(g) ("An entity waives the protection of subdivision (a) as to the entity's own information by filing it without redaction and not under seal").

Plaintiff also bases his allegation of forgery on the fact that Defendants' copy of the November Invoice shows account number 5084 in the "Customer Information" section and account number 5094 on the payment coupon. [Doc. 105 ¶ 35]. Plaintiff claims his copy of the November Invoice shows number 5094 in both locations. The Court disagrees. In both Defendants' copy and Plaintiff's copy of the November Invoice, the account number in the "Customer Information" section is partially illegible, and the second to last number may be either an 8 or a 9. This is a common problem when documents using small sized fonts are scanned or copied; it is not evidence of forgery. Accordingly, the Court finds no basis to disregard the November Invoice attached to the Affidavit.

Exhibit 2 is the Letter dated November 5, 2014 sent to Plaintiff to inform him of the closing of the Prepetition Account and the creation of Postpetition Account. Plaintiff alleges the Letter attached to the Affidavit is not a true and correct copy of the Letter he received. [Doc. 105 ¶ 37]. Plaintiff attached a copy of the Letter he received to his Response. [Doc. 105, ex. B]. The only difference between the two copies of the Letter is that Defendants redacted all account numbers to their last four digits, while Plaintiff did not. As explained above, redaction of account numbers is consistent with the Rules and is not a basis to conclude that Defendant's copy of the Letter is not a true and correct copy.

Plaintiff also alleges the content of the Letter is confusing. The Letter provides in relevant part as follows:

> Due to the bankruptcy status of Account # 5094 it was necessary to close the account as of the Bankruptcy Petition date. The Account # 5094 has been replaced with the new Account # 5094 in order to bill the account based on current usage. This letter is sent for your reference only in order to update your information with Gwinnett County Water Resources. Enclosed, is the Final Bill for Account # 2879 as well as a copy of our Bankruptcy Guidelines. The Final Bill has a balance of $2,946.60 which will remain on the account under Bankruptcy Protection until the case is discharged or dismissed.

[Affidavit ex. 2].

As discussed further below, the Letter does appear to mix-up the account num-

bers for the Pre- and Postpetition Accounts. It states that the November Invoice enclosed with the Letter is for the Postpetition Account rather than the Prepetition Account, and that the balance on that Account is subject to bankruptcy protection. However, this error goes to the question of whether Defendants violated the stay, and does not provide a basis for disregarding the Letter as evidence.

Exhibit 3 is Defendants' Bankruptcy Guidelines. Plaintiff alleges Defendants' copy of the Guidelines is a forgery because it differs from the copy he received. [Doc. 105 ¶ 41, 44]. Plaintiff attached his copy of the Guidelines to his Response. [Doc. 105, ex. C]. Plaintiff is correct that two different versions of the Guidelines have been submitted by the parties. Defendants' copy of the Guidelines is titled "Bankruptcy Account Guidelines." Plaintiff's copy is titled "Residential Bankruptcy Account Guidelines." Most of the differences between the two documents are nonsubstantive. However, as noted above, with respect to restoring discontinued water service, Defendants' copy says "water service will be restored the *same* business day after receipt of the payment . . . ." [Doc. 100, ex. 3 (emphasis added)]. Plaintiff's copy says "service will be restored *next* business day after receipt of the necessary payment . . . ." [Doc. 105, ex. C (emphasis added)].

This is sufficient to raise a question as to whether the version of the Guidelines attached to the Affidavit is the same version of the Guidelines sent to Plaintiff, such that the Guidelines may be excludible from evidence.[5]

Turning to the Affidavit, Plaintiff alleges it does not show Buck is competent to testify in general and specifically as to the delinquency on Account 5094, and it is not based on Buck's personal knowledge. [Doc. 105 ¶¶ 5, 9, 11, 12, 50]. The Court disagrees. In the preamble of the Affidavit, Buck states that she made the Affidavit after being placed under oath. In paragraph 1 of the Affidavit, Buck states she is over 18 years old and without any mental infirmities or disabilities. In paragraph 2, she states that she works as the Manager of the Customer Care Section for the Water Department, that she is familiar with Plaintiff's account, and that her statements are based on personal knowledge and/or review of business records attached to the Affidavit. These statements are sufficient to establish Buck's competency and personal knowledge. Furthermore, contrary to Plaintiff's argument, Buck does not need to be a certified public accountant to testify as to Plaintiff's payment delinquency when Buck's knowledge is based on a review of business records described in and attached to the Affidavit,[6] including the

---

**5.** The Court notes that Plaintiff apparently received a second copy of the Guidelines in conjunction with correspondence sent by Defendants dated April 13, 2015 (the "2015 Correspondence"). [Doc. 29 ex. AA(N)]. The bankruptcy guidelines sent with the 2015 Correspondence match Plaintiff's copy of the Guidelines rather than the copy attached to the Affidavit. It is not clear whether the Guidelines Plaintiff attached to his Response were those he received with the 2015 Correspondence or those he received as part of the Final Statement.

**6.** Plaintiff contends the reference to Buck's review of business records shows that para-

graphs 4–17 of the Affidavit contain hearsay. [Doc. 105 ¶ 50]. However, business records are not excluded by the rule against hearsay. Fed. R. Evid. 803(6). The Affidavit states: "The records attached hereto are business records of the [Water] Department. I am personally familiar with the method and mode by which the [Water] Department makes and maintains business records. The records attached hereto were made in the regular course of business and it was the regular course of business to make such records at or within a reasonable time of the transactions or events so recorded." [Affidavit ¶ 18].

November Invoice. *Stanley v. Kansas Counselors of Kansas City*, 639 Fed.Appx. 589, 590 (11th Cir. 2016); Fed. R. Evid. 803(6).

■ Plaintiff alleges the Affidavit is insufficient because it is unverified and was not administered under oath. [Doc. 105 ¶¶ 1–3]. He also alleges Buck's identity is not sufficiently established, and that the use of the phrase "I am" by Buck is vague. [*Id.* ¶¶ 6–8]. An affidavit is defined as a "voluntary declaration of facts written down and sworn to by a declarant, usu. before an officer authorized to administer oaths." Black's Law Dictionary (10th ed. 2014). The preamble to the Affidavit states: "PERSONALLY APPEARED before the undersigned officer duly authorized by law to administer oaths, CAROL BUCK, who, after being placed under oath, deposes and states from his [sic] own personal knowledge as follows . . . ." [Doc. 100, p. 1]. The last page of the Affidavit was signed on May 26, 2016 by Phyllis R. Mitchell, who is identified as a notary public whose commission expires on September 17, 2018. A notary seal is visible over the signature. Based on the foregoing, the Court finds the Affidavit is sufficiently sworn and verified and is sufficient to identify Carol Buck as the affiant.[7]

Plaintiff contends paragraphs 7–10, 12–16, and 18 of the Affidavit are unsupported. [Doc. 105 ¶¶ 15–18, 26, 37, 39, 47–49, 52–53]. However, as explained above, the Affidavit expressly states that it is based on Buck's personal knowledge and her review of business records. Both types of evidence are admissible or can be reduced to an admissible form. Fed. R. Evid. 602, 803(6); *see also Stanley*, 639 Fed.Appx. at 590–91 (finding no abuse of discretion in considering on summary judgment an affidavit based on personal knowledge and review of business records). Unless Plaintiff can show the statements in the Affidavit are not within Buck's personal knowledge and are not based on her review of the business records attached to the Affidavit, it is not sufficient to make a bare accusation that the statements lack support. Furthermore, to the extent Plaintiff has expressly admitted some of the statements are true, such admissions may be considered on summary judgment.[8] Fed. R. Evid. 801(d)(2)(A).

Plaintiff further contends that paragraph 4 of the Affidavit misapplies use of the word "residence" [Doc. 105 ¶ 10]; paragraph 5 of the Affidavit consists of hearsay [*Id.* ¶ 13]; paragraph 6 is a recitation of facts taken from the record [*Id.* ¶ 14]; paragraphs 9 and 11 of the Affidavit are in conflict [*Id.* ¶ 32]; paragraph 10 is vague [*Id.* ¶ 26]; and paragraph 13 appears as wrong. [*Id.* ¶ 26, 37, 39].

Paragraph 4 states that Plaintiff maintained an account for water service at his residence at 6038 Eagles Rest Trail, Sugar Hill, GA. Plaintiff does not explain why the word "residence" is misused. The Eagles Rest Trail address is the address Plaintiff listed on his bankruptcy petition and the address given on his amended complaint. [Doc. 29 ¶ 6; Case No. 14–71765 Doc. 1]. The Court has previously ruled that Plaintiff has alleged the address is his resi-

---

7. By contrast, an *unsworn* declaration will only satisfy a legal requirement for a sworn or verified statement if it is subscribed by the maker under penalty of perjury as being true and correct. 28 U.S.C. § 1746.

8. For example, paragraphs 7 and 8 of the Affidavit refer to Plaintiff's November 4, 2014 notice to the Water Department by phone and by email of his bankruptcy filing. [Doc. 100 ¶¶ 7–8]. Plaintiff's Counter Affidavit states that he provided notice of the bankruptcy to the Water Department by email on November 4, 2014. [Doc. 105 ¶ 24].

dence. [Doc. 112, p. 14]. In these circumstances, Buck's use of the word residence does not raise any evidentiary issues.

Paragraph 5 states that as of November 3, 2014, the Water Department had shut off Plaintiff's water service due to delinquency in payment. This is not hearsay if based on Buck's personal knowledge or her review of the business records attached to the Affidavit.

■ Paragraph 6 provides the petition date and case number for Plaintiff's bankruptcy filing and the date his case was converted to Chapter 7. While it is true that these facts reflect the record in Plaintiff's bankruptcy case, Plaintiff has not shown they are inadmissible. Even without Buck's testimony, the Court can take judicial notice of its own docket as a "source[ ] whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *U.S. v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987) ("A court may take judicial notice of its own records and the records of inferior courts.").

Paragraph 9 of the Affidavit indicates that the Water Department closed the Prepetition Account and opened the Postpetition Account with an effective date of November 4, 2014. As explained in detail above, this statement in Paragraph 9 is supported by the November Invoice and Letter attached to the Affidavit. Furthermore, paragraph 9 does not conflict with paragraph 11, which states the November Invoice was generated on November 5, 2014 and showed amounts owed for water usage through November 3, 2014. The November Invoice reflecting water usage on the Prepetition Account through November 3, 2014 is consistent with the Postpetition Account being effective on November 4, 2015.

Paragraph 10 of the Affidavit states that the Water Department restored service to Plaintiff on November 4, 2014. It gives an exact date and is not vague. This statement is supported by the November Invoice and Letter. However, as discussed above, Plaintiff has shown this fact to be in dispute.

Paragraph 13 of the Affidavit states the Water Department mailed the Final Statement to Plaintiff on November 5, 2014, and that a true and correct copy of the Guidelines are attached. Plaintiff contends the Guidelines are not a true and correct copy. As explained above, Plaintiff has shown that the Guidelines attached to the Affidavit may not be the same version of the Guidelines mailed to Plaintiff. Therefore, the Court will not consider the Guidelines or any of Buck's statements regarding the Guidelines in deciding this Motion.

## IV. Whether Defendants Are Entitled to Judgment as a Matter of Law

■ Viewing the undisputed material facts in the light most favorable to Plaintiff shows that Plaintiff filed for bankruptcy on November 3, 2014. Defendants received notice of the filing on November 4, 2014. On November 5, 2014, Defendants sent Plaintiff the Final Statement for the Prepetition Account. Thus, on the date the Final Statement was sent, Defendants knew the automatic stay was in effect. They also intentionally sent the Final Statement. This satisfies the willfulness requirement for recovery under § 362(k).

■ The question then is whether the Final Statement constitutes an attempt to collect a debt. Defendants rely on three facts—the lack of a return envelope included with the Final Statement, the fact that the Letter stated that the balance of the Prepetition Account would remain under bankruptcy protection until discharged or until the bankruptcy case was dismissed, and the fact that the Final Statement did not threaten to terminate water service if

the Prepetition Account balance was not paid.

However, nowhere in the Final Statement is Plaintiff advised not to send payment. The November Invoice includes a payment coupon with the words, "RETURN WITH PAYMENT," "PAYMENT DUE 12/01/2014," "PAY THIS AMOUNT 2,946.60," and "Make checks payable to Gwinnett County Department of Water Resources." [Doc. 100, ex. 1]. The omission of a return envelope for payment does not by itself negate these statements or their coercive effect.

The Letter states in part as follows:

Due to the bankruptcy status of Account # 5094 it was necessary to close the account as of the Bankruptcy Petition date. The Account # 5094 has been replaced with the new Account # 5094 in order to bill the account based on current usage. This letter is sent for your reference only in order to update your information with Gwinnett County Water Resources. Enclosed, is the Final Bill for Account # 2879 as well as a copy of our Bankruptcy Guidelines. The Final Bill has a balance of $2,946.60 which will remain on the account under Bankruptcy Protection until the case is discharged or dismissed.

[Doc. 100, ex. 2]. If the Letter accurately identified the Pre- and Postpetition Accounts, it could serve to mitigate any coercive effects of the November Invoice. However, the Letter comes up short due to apparent clerical errors. First it states that the Prepetition Account is being closed and replaced with the Prepetition Account, rather than the Postpetition Account. Next, it specifies only that the Letter itself is being sent for informational purposes. Then, it states that the November Invoice is the final bill for the *Postpetition Account,* rather than the Prepetition Account. Finally, it states that the balance

due on the final bill is under bankruptcy protection. The Letter is simply not clear that Plaintiff need not pay any prepetition balance owed to Defendants.

Defendants cite to *Gordon v. Taylor (In re Taylor),* 430 B.R. 305 (Bankr. N.D. Ga. 2010) (Diehl, J.), for the proposition that letters or statements, including a creditor's position and the status of the loan, should not be construed as an improper demand for payment. *Taylor* involved an unauthorized postpetition sale of real property. While pursuing the sale, Debtor requested and received a loan payoff from the mortgage creditor via an online automated system. *Id.* at 312. The court found that providing a loan payoff did not violate the stay because a debtor may have a legitimate reason to need the payoff, such as pursuing refinance of the loan, selling the property with court authority, or reviewing a claim. *Id. Taylor* can be distinguished in that the creditor provided information requested by the debtor and it involved a secured claim. Other cases cited by Defendants also involved secured claims. *In re Redmond,* 380 B.R. 179, 186–87 (Bankr. N.D. Ill. 2007) (payoff letters sent by mortgage creditor at debtor's request did not violate the stay); *Schatz v. Chase Home Finance (In re Schatz),* 452 B.R. 544, 550 (Bankr. M.D. Pa. 2011) (statement sent by mortgage creditor that did not include a due date and did not threaten any consequences for nonpayment did not violate the stay).

In *Thomas v. Seterus Inc. (In re Thomas),* 554 B.R. 512 (Bankr. M.D. Ala. 2016), the court distinguished between communications by secured creditors and communications by unsecured creditors as follows:

Plaintiffs argue that mere communication of a debt to the debtor or a third party is an "act to collect." ... This is true for an unsecured debt because

there is no legitimate reason to communicate its existence outside bankruptcy other than as an attempt to collect it. For a debt secured by a mortgage on residential real property, however, there are valid reasons to communication information about the debt that have nothing to do with attempting to collect it against the debtor personally.

*Id.* at 519 (citations omitted). This Court does not agree that any mere communication by an unsecured creditor regarding a prepetition debt violates the stay. "[D]etermining whether a violation of the automatic stay occurs can be complicated and depends on such specifics as what type of communication was sent to the debtor and whether the communication had a purpose other than collection of the debt outside the scheme contemplated by the Bankruptcy Code." *Cousins v. CitiFinancial Mortg. Co. (In re Cousins)*, 404 B.R. 281, 287 (Bankr. S.D. Ohio 2009). An important factor is whether the communication was coercive or harassing. *Colorado East Bank & Trust v. McCarthy (In re McCarthy)*, 421 B.R. 550, 565–67 (Bankr. D. Colo. 2009) (finding that creditor's attempt to have debtor reaffirm an unsecured debt violated the stay); *In re Draper*, 237 B.R. 502, 505 (Bankr. M.D. Fla. 1999) ("Any act taken by a creditor designed to collect a prepetition debt violates the stay if it amounts to pressure on the debtor to pay."). Even a communication sent for informational purposes should be limited to that purpose by including "at least one prominent and unambiguous disclaimer ...." *Thomas*, 554 B.R. at 520.

██ As noted above, the communication at issue in this proceeding included a payment coupon, a due date, and instructions for payments remitted by check. Defendants are correct that nothing in the November Invoice or the Letter indicates Plaintiff will suffer any adverse conse-

quences in the event of nonpayment. But the November Invoice and Letter also omit any clear language that Defendants are not attempting to collect a debt or that the Final Statement—as opposed to the Letter—was sent for notice purposes only. The only reference to the balance being under bankruptcy protection identifies the relevant account as the Postpetition Account rather than the Prepetition Account. While this is most likely a clerical error, the Court has no evidence it is a clerical error. Furthermore, the weight of authority holds that "a violation of the automatic stay occurring from intentional creditor action following human clerical or computer error is nonetheless a 'willful' violation remediable under § 362(k)." *In re Nixon*, 419 B.R. 281, 289 (Bankr. E.D. Pa. 2009) (collecting cases); *see also Jove Engineering*, 92 F.3d at 1556–57 (IRS could not avoid liability for stay violation caused by computer problems). Considering the evidence in the light most favorable to the nonmoving party, the Court cannot conclude that Defendants are entitled to judgment as a matter of law on the basis that they did not violate the stay.

██ Defendants also argue they are entitled to summary judgment because Debtor was not injured by the alleged stay violation, and all injuries alleged by Plaintiff arise from the disconnection of water service rather than Plaintiff's receipt of the November Invoice. The Court disagrees. Plaintiff's amended complaint requests costs and actual damages, including: out of pocket costs for filing this proceeding, amounts sought to be collected in the November Invoice because the Invoice was wrong, reasonable legal and administrative fees, and various compensatory damages. [Doc. 29 p. 28, p. 29 ¶ C, p. 30 ¶ H, I, J, p. 32 ¶ 20.h, 20.j]. Although Plaintiff did not offer any evidence in support of

his injuries in response to the Motion,[9] Defendants have likewise failed to show that Plaintiff cannot prove injury. The Court is not inclined to grant summary judgment against a pro se party solely on the basis of uncertainty regarding injury and damages.

Accordingly, it is ORDERED that Defendants' Motion is DENIED. It is further

ORDERED that the trial in this matter shall be held on **October 14, 2016 at 10:00 am, COURTROOM 1402, UNITED STATES COURTHOUSE, RICHARD B. RUSSELL FEDERAL BUILDING, 75 TED TURNER DRIVE** (f/k/a SPRING STREET), S.W., ATLANTA, GEORGIA. The trial will not be rescheduled except by express permission of the Court.

Counsel and pro se parties are hereby directed to prepare a list of exhibits and witnesses and to mark all exhibits. A copy of the list and copies of all exhibits shall be provided to opposing counsel at least five (5) business days before trial. A copy of the list and two (2) copies of all exhibits shall be provided to my Courtroom Deputy Clerk at least five (5) business days before trial. The parties shall also file with the Clerk's Office a separate, typed listing of each party's objections to the exhibits of the other party prior to the date of trial. Any listed document to which an objection is not raised shall be deemed to have been stipulated as to authenticity by the parties, and such documents will be admitted at trial without further proof of authenticity.

Counsel and pro se parties are directed to submit a statement of proposed Findings of Fact and Conclusions of Law to chambers at least five (5) business days before the trial.

If the parties determine that, by reason of settlement or other good cause, the case should not be tried which determination shall be subject to Court approval, counsel are directed to notify the Court immediately in order that the time set aside for the instant trial may be assigned to other litigants, since all cases in this Court are specifically set to commence on a date certain.

**IT IS ORDERED**

9. Debtor did attach an affidavit to his amended complaint that made various statements regarding infliction of emotional distress, but those statements were tied to the disconnec-

tion of water service rather than the mailing of the November Invoice. [Doc 29 ex. A ¶ 120–121].